MORRIS, ADM'R., v. LANGLEY MILLS *ET AL.*

(113 S. E., 632)

1. HIGHWAYS—DUTY OF MAINTAINING SAFEGUARDS HELD TO REST ON COUNTY AND NOT ON OWNER OF POND CROSSED BY HIGHWAY.—Where a causeway over a pond was part of a public highway wholly under the county's jurisdiction and control, the duty of maintaining such safeguards as would prevent one falling into the pond rested on the County, and not on the owner of the pond, where no negligence in maintaining the pond was charged.

2. BRIDGES—FAILURE TO PROVIDE ADEQUATE GUARD RAILS MAY CONSTITUTE DEFECT.—The failure to provide adequate guard rails on a causeway or bridge may constitute a defect in, or amount to a negligent repair of such causeway or bridge.

3. HIGHWAYS—MEASURE OF DUTY IN MAINTAINING HIGHWAY STATED.—The measure of a county's duty is ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated, having due regard to the character of the travel, the incidental purposes for which a highway may be lawfully used, and the nature of the danger at the point in question.

4. HIGHWAYS—USE BY CHILDREN FOR PURPOSES OF PLAY HELD NOT AS A MATTER OF LAW AN ILLEGITIMATE USE NOT TO BE ANTICIPATED BY HIGHWAY AUTHORITIES.—While, under the Civ. Code 1912, §1972, county authorities are not bound to anticipate dangers arising from negligent use of highway, they are bound to take notice that children of tender years may lawfully use the highway, and because of their lack of discretion and childish sportiveness are subject to dangers not besetting travelers of mature years, and hence the use by children of a highway for purposes of play is not as a matter of law an illegitimate use not to be anticipated by authorities required to keep highways in a reasonably safe condition.

5. HIGHWAYS—ISSUES IN ACTIONS FOR DEATH SHOULD HAVE BEEN SUBMITTED TO THE JURY.—In an action against a county for the death of a child five years old, drowned by falling from a causeway into a pond when she climbed a low railing and reached for a stick, which was in the pond, issues *held* for the jury, and verdict improperly directed.

Before PEURIFOY, J., Aiken, November, 1920. Affirmed as to Langley Mills. Reversed as to Aiken County.

Action by E. P. Morris, as Adm'r of Edna Mae Morris, against the Langley Mills and Aiken County. From a directed verdict for defendants, the plaintiff appeals.

*Messrs. R. L. Gunter* and *John F. Williams,* for appellant, cite: *Question of negligence in upkeep of bridge was for the jury:* 76 S. C., 202. *Attractive nuisance:* 78 S. C., 15; 95 S. C., 238; 108 S. C., 521. *Child under seven incapable of contributory negligence:* 76 S. C., 543. *Negligence of infant no defense to this action:* 66 S. C., 51.

*Messrs. Hendersons,* for Langley Mills, cite: *County highway:* 60 S. C., 78. *Must be due to negligence of defendants to warrant a recovery:* 113 S. C., 363; 109 S. C., 283.

*Mr. J. B. Salley,* for Aiken County, cites: *Attractive nuisance:* 109 S. C.,238; 113 S. C., 363; 108 S. C.. 523. *No liability of municipality in absence of negligence:* 111 S. C., 7; 38 S. C., 282; 40 S. C., 390.

September 1, 1922.

The opinion of the Court was delivered by Mr. Justice Marion.

The action is for damages on account of alleged wrongful death of plaintiff's intestate, a young girl 5 years and 9 months of age, who was drowned by falling from a causeway on a public highway of the defendant, Aiken County, into a pond alongside the highway on the premises of the defendant, Langley Mills. At the place of the accident the highway consists of a causeway constructed over and across the water, some 5 or 6 feet deep on both sides of the causeway, of an artificial pond, maintained as a fishpond and for purposes of watering stock by the Langley Mills. It is alleged that the death of the child was caused by the negligent and willful failure of the defendants to erect and maintain "proper fencing or safeguards" to prevent children and others going on and across said causeway from falling into the pond. It is admitted in the answer of the defendant, Aiken County that:

"Said road is a public highway forming a part of the highway leading from Aiken to Augusta, Ga., and belongs to the county of Aiken as such public road."

Upon the trial below the Circuit Judge directed a verdict in favor of both defendants. The only exceptions which it will be necessary to consider are those imputing error to the trial Judge in so ruling.

The alleged delict upon which plaintiff's cause of action is based was the failure to erect and maintain proper safeguards to prevent falling from the causeway into the pond. Since it is undisputed that the causeway was a part of the public highway, wholly under the jurisdiction and control of the defendant county, in the opinion of a majority of this Court the duty, if any, to prevent falling from the causeway into the pond rested upon the county, and not upon the defendant, Langley Mills. No recovery against Langley Mills is sought upon the theory that the Mills was guilty of actionable negligence in merely maintaining the pond in proximity to the highway. It is considered, therefore, that the verdict was properly directed as to the Langley Mills.

We are of the opinion, however, that there was error in directing a verdict in favor of the defendant, Aiken County. The testimony tended to establish that the plaintiff's intestate was on her way home from school; that the schoolhouse was on one side of the pond and her home on the other; that in traveling the highway in company with other children her attention was attracted by a stick, with a string attached thereto, floating on the water; that she pulled off her shoes and attempted to reach the stick; that at the point where this attempt was made the water of the pond was within a few inches of the level of the causeway; that there was a plank railing about 1 by 5 inches, some 18 or 20 inches from the ground, tacked to posts about 15 feet apart, along the side of the causeway next to the water; that the child climbed over

this railing, and was holding with one hand to the plank railing, reaching for the attractive stick with the other hand, when she fell into the pond and was drowned. The causeway was about 15 feet in width (according to plaintiff's contention) on a much-traveled highway in the center of the town of Langley, a town of about 2,000 inhabitants, and was used for passage of about 250 or more children daily.

The only question for consideration is whether the evidence adduced would reasonably warrant an inference of actionable negligence as against the county. That the failure to provide adequate guard rails upon a causeway or bridge may constitute a defect in or amount to a negligent repair of such causeway or bridge is too well settled to require the citation of authority. *Blakeley v. Laurens County,* 55 S. C., at pages 424, 425, 33 S. E., at page 503. The measure of the county's duty in that regard is ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated, having due regard to the character of the travel, the incidental purposes for which the highway may be lawfully used, and the nature of the danger at the point in question. While by the express terms of the statute (Section 1972, Civil Code of 1912) county authorities are not bound to anticipate dangers that may arise from the negligent use of the highway, they are bound to take notice of the fact that children of tender years, incapable of exercising due care as measured by the standard of the man of ordinary sense and prudence, may lawfully use the people's highway, and that such users are, both from lack of discretion and from childish sportiveness, subject to dangers that would not beset the traveler of mature years. The use thereof by children for purposes of play and sport is not as a matter of law an illegitimate use of a highway, "not to be anticipated by the authorities whose duty it is

to keep highways in a reasonably safe condition." *Irvine v. Town of Greenwood,* 89 S. C., 511; 72 S. E., 228; 36 L. R. A. (N. S.), 363; *Stone v. City of Florence,* 94 S. C., 375; 78 S. E., 23. The fact that plaintiff's intestate, a child of an age presumed to be incapable of negligence (*Tucker v. Buffalo Mills,* 76 S. C., 539; 57 S. E., 626; 121 Am. St. Rep., 934; *Stone v. Florence, supra*), temporarily diverted from the use of the causeway as a place of travel by the attractions of the pond, was at the time of the casualty using the causeway for purposes of play, does not warrant the legal conclusion of non-liability on the ground that she was not "using the highway as such."

The issues raised by the facts of the case at bar should have been submitted to the jury.

The judgment as to the defendant, Langley Mills, is affirmed. The judgment as to the defendant, Aiken county, is reversed, and a new trial ordered.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (concurring and dissenting): I concur in the affirmance of the judgment in favor of the defendant, Langley Mills, but dissent from the reversal of the judgment in favor of the county of Aiken.

The connection of the county of Aiken with the occurrence arises out of the following facts:

Langley Mills have maintained for many years a dam across Mockingbird branch (a tributary of Horse creek, at Langley, S. C.), which created a millpond, extending some distance up the stream; the public highway leading from Aiken to Augusta, passing through the village of Langley, formerly made a detour at the pond passing down a hill, across the stream below the dam, and ascending a hill on the other side. The county authorities with the consent of Langley Mills cut out this detour by constructing an embankment or causeway directly across the pond upon which the highway was located, some 35 feet wide. Iron

pipes were laid under the embankment, so that the flow of water into the pond would not be impeded. The new part of the highway thus located was under the jurisdiction of the county authorities, and the old part of it was abandoned. On each side of the highway thus located across the pond the county authorities erected a single plank fence, near the edge of the water. At each end of the new road there was a substantial plank fence, inclosing lots belonging to the Mills, used for various purposes. The planks, 6 inches wide in the single plank fence, were nailed to posts some 12 or 15 feet apart, and were about 2 feet from the ground.

The school house of the village is located on one side of the pond and a number of operatives' houses on the other. Many children used the road in going to and returning from school, estimated at 250 per day.

On the occasion in question the Morris girl was returning from school with a party of other school children. While in the highway near the center of the pond she was attracted by a stick with a string tied to it in the water near the bank. She announced her intention of getting it, and was warned by her companions not to make the attempt. She paid no heed to the warning, pulled off her shoes and stockings, climbed over the rail of the fence, stood near the edge of the water, holding to the rail with her left hand, and in reaching for the stick with her right, lost her hold of the rail and fell into the pond, drowning before help could reach her.

A majority of the Court are of opinion that the verdict was properly directed in favor of the Langley Mills, and upon argument declined to hear from counsel representing that defendant. The basis of that conclusion, as I understand, is as follows: The complaint is not drawn upon the theory that the Langley Mills was guilty of negligence in maintaining a place of instrumentality attractive and dangerous to children of tender years, but upon the theory that it was negligent in not maintaining proper safeguards

*to prevent such a child from falling into the pond,* and the child was attracted by the water and fish, "and in looking over the edge of· same, *it not being protected by a proper safeguard and fence as aforesaid,* she fell into the pond or lake and was drowned." The testimony fails to show that her fall was due to any defect in the fence; on the contrary that she had safely climbed over the fence, and fell when her hold upon the rail gave way; and that there was no evidence tending to establish the negligence charged to the Mills, the direction of a verdict in its favor was right. In this conclusion I concur, but do not agree that the direction of a verdict in favor of the county of Aiken should be reversed. In fact I think that the facts of the case show that the liability of the county rests upon a much frailer foundation than that of the Langley Mills; for if this suit had been based, as it was not, upon the theory that the Langley Mills maintained an attractive nuisance, unguarded, into which the little girl fell and was drowned while responding to natural childish instincts, it would have been difficult to avoid submitting the case to a jury. See the recent case of ·*Renno v. Railway Co.,* 112 S. E., 439, decided by the Court *en banc.*

So far as the county of Aiken is concerned, the death of the child is alleged to have resulted from the negligence of the county in not maintaining proper safeguards to prevent children *from falling into the pond.* The complaint alleges that:

Upon the occasion in question the child "was attracted by the waters and fish of the said pond or lake, *and in looking over the edge of the same,* it not being protected by a proper safeguard and fence as aforesaid, she fell into the pond or lake and was drowned."

If the evidence had established the fact that the child in using the highway as such, and while in the highway, was attracted by the sight· of the water and fish, and, leaning against the railing, was precipitated into the water

by reason of its defective condition, doubtless the complaint, by a liberal interpretation, would have been sufficient to cover such conditions, and would have presented a case of liability against the county, at least a case for submission to the jury. It might well be concluded that such conduct on the part of a child was an occurrence reasonably to have been apprehended and guarded against by the county. But the evidence does not present such a state of facts by any means. It shows that the child had crossed the fence, and passed from the highway, and was at the edge of the water, holding on to the fence with one hand and reaching out with the other for the stick with a string attached to it, when her hold gave way—a casualty not attributable to any defect in the fence. Unless, therefore, it can be held that the failure of the county to erect at such a point a barrier sufficient to prevent a child from leaving the highway and being injured by some instrumentality beyond the limits of the highway is a defect in the highway for which the county is liable to one not using it as a highway, I can find no justification for the conclusion arrived at in the leading opinion.

It must be remembered that the liability of the county for the negligence of its officers and agents in connection with the construction, maintenance, and repair of its highways is exceptional, and specifically limited by statute to injuries within a prescribed sphere. There was no liability at common law; the statute alone creates it; and, too, the statute, as construed by the decisions of this court, which are reviewed in the dissenting opinion of the writer, in the case of *Faust v. Richland County,* 117 S. C., 251; 109 S. E., 151:

1. "A municipal corporation, being a governmental agency, charged with the duty of keeping its avenues of travel in proper repair, is not liable, in a civil action, for damages on account of injuries sustained in consequence

of a breach of this duty on the part of the agents of the corporation, in the absence of a statute imposing such liability, and only then upon a substantial compliance with the requirements and conditions upon which such liability is predicated." 117 S. C., 268; 109 S. E., 156.

2. "The statutes create a liability upon a municipal corporation for a breach of this duty only where the injury has resulted from a defect in or the negligent repair of said avenues of travel." 117 S. C., 269; 109 S. E., 156.

3. "Those only who at the time of the injury are making use of said avenue of travel for the legitimate purposes of travel are entitled to the benefit of the statutes." 117 S. C., 269; 109 S. E., 157.

It cannot be contended that the highway was in a condition requiring repair, and that the county was negligent in failing to repair it, or in the manner of making the repairs; the question primarily is, Was the failure to properly guard the pond, so as to prevent a child attracted by the pond from *leaving the highway,* a defect in the highway? Coincidentally with this inquiry is the question, Can a child thus *leaving the highway* be said to have been using it for legitimate purposes of travel at the time of its injury? For bear in mind that there is no liability unless both of these elements appear—a defect in the highway and the use at the time of the highway for legitimate purposes of travel by the person injured.

It may be assumed that, if this had been a private road constructed and maintained by the Langley Mills, a duty under the circumstances would have arisen to guard the pond by the erection of barriers. This duty would have arisen with reference to the pond, and its liability would have been placed upon a breach of this duty, not upon the ground that there was a defect in the road. So there may have been a moral obligation on the part of the county, under the circumstances, in view of the proximity of the pond, its attractive features, and the number of

children passing over the road, to fence off the pond; that still would have been a duty arising in reference to the pond, and a breach of it would not have been attributed to a defect in the highway. In the one case the private corporation would not enjoy the immunity from liability which is accorded to the county in the other.

In *Acker v. Anderson County,* 20 S. C., 495, the plaintiff had been injured in consequence of the mule that he was driving taking fright at an advertisement board upon a bridge and backing the buggy down an embankment. The plaintiff contended that the placing of the sign or allowing it to be placed where teams would probably be frightened by it was a defect in the bridge which rendered the county liable for the damage in that case, but the court held otherwise:

"Even if the commissioners had allowed it to be placed there, it is more than doubtful whether the county could have been made liable. The only matter for which the act gives an action against the county is 'a defect in the repair of a highway, causeway or bridge.' "

In determining the question whether or not the cause which induced the leaving of the highway was a defect in the highway, there does not appear any difference in principle between an attracting cause, as in the case at bar, and a repelling cause, as in the Acker Case. In the one case, the child was induced to leave the highway by an *attraction* outside the highway; in the other the mule was induced to leave the highway, by a *repelling cause* outside of the highway. Is there any reason for holding that the cause in one case was a defect in the highway and in the other not?

Take, for instance, the railing upon a bridge: It is put there primarily and principally to prevent pedestrians and drivers of vehicles from being precipitated over the sides of the bridge; persons who may be using the bridge as a bridge is expected to be used. If there should be no rail-

ing there, or a defective one, and such persons should be injured by reasons of such absence or defect, liability ensues. At the same time I can appreciate the fact that, if a child, using the bridge normally, should be attracted by the sight of fish, flowers, rushing waters, "snake doctors," or what not, should lean against the railing and fall over in consequence of its defective condition, it might not unreasonably be held that, in view of the use of the bridge by children and of their idle and thoughtless craze for amusement, this was a condition reasonably to have been apprehended and guarded against. But if the bridge be sound in abutments, span, pillars, floor, and railing, and a child should crawl under the railing, attracted by the sights mentioned, and should fall from the bridge by its own lack of care, I cannot see that the presence of the attraction created a defect in the bridge.

Thousands of miles of road in this country parallel places of danger, streams, ponds, milldams, lakes, reservoirs, ravines, precipices, seashore, and so forth; shall it be declared that in every such case the county takes the risk, by not erecting barriers, of a child, led by curiosity or mischief, leaving the highway which is safe and being injured by some nocuous agent outside?

"A municipality is not bound to so maintain bridges as to make them absolutely safe, its obligation being merely to exercise ordinary care in keeping the bridges under its control in a safe condition for all usual and ordinary modes of travel and transportation of property over them, having reasonable regard to the increased demands upon them in the locality where situated, and to possible or common dangers, such as the frightening of horses, that may be expected." 4 R. C. L., 223.

"Such nonrepair in general terms may be said to be any defect in a highway which renders it unsafe for ordinary travel." 4 Dillon, M. C. (5th Ed.), § 1694.

"Any object in, upon or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which from its nature and position would be likely to produce that effect, will, as a general rule, constitute a defect in the highway." *Hewison v. New Haven,* 34 Conn., 140; 91. Am. Dec., 718; *Richmond v. Pemberton,* 108 Va., 220; 61 S. E., 787.

Towns "are not liable for obstructions in portions of the highway not part of the traveled path, and not so connected with it they will affect the security or convenience for travel of those using the traveled path." *Smith v. Wendell,* 7 Cush. (Mass.), 498, and other cases cited in note to 4 Dillon, 2962.

"That which never happened before, and which in its character is such as not naturally occur to prudent men, to guard against its happening at all, cannot, when in the course of years it does happen, furnish good grounds for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency." *Hubbell v. Yonkers,* 104 N. Y., 434, 10 N. E., 858; 58 Am. Rep., 522.

In Massachusetts an injury received by a traveler outside of the road, though the road itself was dangerous, is not within the statute, of which the words are, "injury by reason of any defect" in the highway. *Tisdale v. Norton,* 8 Metc. (Mass.), 388; *Sparhawk v. Salem,* 1 Allen (Mass.), 30, 79 Am. Dec.; 700; *Richards v. Enfield,* 13 Gray (Mass.), 344; *Baltimore v. Brannon,* 14 Md., 227; *Basset v. St. Joseph,* 53 Mo., 290; 14 Am. Rep., 446; *Stone v. Attleborough,* 140 Mass., 328; 4 N. E., 570; *Stockwell v. Fitchburg,* 110 Mass., 305; *Sulliven v. Boston,* 126 Mass., 540; *Lowe v. Clinton,* 136 Mass., 24; *Alston v. Newton,* 134 Mass., 507; 45 Am. Rep., 347; *Augusta v. Tharpe,* 113 Ga., 152; 38 S. E., 389; *Temby v. Ishpeming,* 140 Mich., 146;

103 N. W., 588; 69 L. R. A., 618; 112 Am. St. Rep., 392; *Brabon v. Seattle,* 29 Wash., 6; 69 Pac., 365.

"It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day." 4 Dillon, p. 2998.

"A municipality cannot properly be charged with the duty of safeguarding young children against accident while crossing bridges, except to afford such protection as is comprehended within its ordinary obligation to keep and maintain its bridges in a reasonably safe condition. It is therefore not bound to erect barriers or to station watchmen for the special purpose of protection to the young. Accordingly a bridge owner is not liable for injury resulting to a child as a consequence of his venturing on his childish recklessness, where no one, child or adult, should go." 4 R. C. L., 219; *Gavin v. Chicago,* 97 Ill., 66; 37 Am. Rep., 99; 59 Am. Rep., 105, note.

As a rule the municipality is under no obligation to put up railings or barriers to prevent travelers from leaving the traveled portion of the highway or from leaving the highway and running into danger on adjoining property where the way itself is safe, and is not liable to a person who so leaves the highway and is injured. *Flansbury v. Elbridge,* 205 N. Y., 423; 98 N. E., 750; 41 L. R. A. (N. S.), 546; *Herndon v. Salt Lake City,* 34 Utah, 65; 95 Pac., 646; 131 Am. St. Rep., 827; *Blankenship v. King County,* 68 Wash., 84; 122 Pac., 616; 40 L. R. A. (N. S.), 182; *Sparhawk v. Salem,* 1 Allen (Mass.), 30; 79 Am. Dec., 700; *Puffer v. Orange,* 122 Mass., 389; 23 Am. Rep., 368; *Barnes v. Chicopee,* 138 Mass., 67; 52 Am. Rep., 259; *Shea v. Whitman,* 197 Mass., 374; 83 N. E., 1096; 20 L. R. A. (N. S.), 980; *Bell v. Wayne,* 123 Mich., 386; 82 N. W., 215; 48 L. R. A., 644; 81 Am. St. Rep., 204; *Mineral City v. Gilbow,* 81 Ohio St., 263; 90 N. E., 800; 25 L. R. A. (N. S.), 627; *Scranton v. Hill,* 102 Pa., 378;

48 Am. Rep., 211; *Plymouth v. Graver,* 125 Pa., 24; 11 Am. St. Rep., 867; *Chapman v. Cook,* 10 R. I., 304; 14 Am. Rep., 686; *Drew v. Sutton,* 55 Vt., 586; 45 Am. Rep., 644; Notes, 58 Am. Rep., 526; 13 L. R. A. (N. S.), 1239.

A town is not bound to erect barriers beside a highway where there is no dangerous place near enough to be reached without straying. *Puffer v. Orange,* 122 Mass., 389; 23 Am. Rep., 368.

I think, therefore, that the judgment in favor of both defendants should be affirmed.