John A. PORTER, a minor, by his Guardian ad Litem, Mrs. Alvarene Jones, Appellant,

v.

UNITED STATES of America, Appellee.

Cecil W. PORTER, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 7013, 7014.

United States Court of Appeals Fourth Circuit.

Argued Oct. 7, 1955.

Decided Dec. 21, 1955.

John Grimball and C. T. Graydon, Columbia, S. C., for appellants.

Lester S. Jayson, Atty., Department of Justice (Warren E. Burger, Asst. Atty.

Gen., N. Welch Morrisette, Jr., U. S. Atty., Irvine F. Belser, Jr., Asst. U. S. Atty., Columbia, S. C., and Paul A. Sweeney, Atty., Department of Justice, Washington, D. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

## PER CURIAM.

These suits were brought under the Federal Tort Claims Act against the United States, one by John A. Porter, a twelve year old boy, through his guardian ad litem, and one by the boy's father, to recover damages for injuries sustained by the boy in June, 1954 when a hand grenade fuse or detonator of army origin, which he had found near his home, exploded in his hand. The question for decision is whether the government was negligent in its care and custody of its explosives so that the detonator came into the boy's possession. The District Judge found no negligence on the part of the United States and dismissed the suit.

Cecil W. Porter, the father, was a sergeant in the United States Army and was stationed at Fort Jackson, South Carolina. The Porter family lived in a rented house located about a mile from the Fort in a civilian settlement which included a trailer camp and a number of houses occupied by civilian and Army personnel. The area had been part of a military reservation during the war, but seven years before the accident it had been turned back to private ownership and control and the occupation of the Army was confined to the Fort.

There was no public system of garbage disposal for the residents of the area, and the practice grew up of dumping garbage and household trash on the land along the roads or in the open country beyond the Porter home. There was evidence that military trucks also dumped trash and stuff occasionally in the area, but no evidence that they dumped ordinance material at any time.

In March, 1954 Mrs. Porter and a young son came across some items of military origin in the dump about 300 yards from their home. This incident was reported to Army authorities by Sergeant Porter and an investigation was made and the dangerous materials on the dump were destroyed. The father warned his son not to pick up any Army material in the future. Later in June the boy found some other items on the dump including the detonator which he recognized as Army equipment and took home. Some of the material was marked dangerous. While playing with the detonator he pulled the ring on the fuse and caused the explosion.

Fort Jackson covers an area of approximately 320 square miles. Soldiers are trained on the range under simulated battle conditions at various places within this territory. Sometimes the maneuvers occur in total darkness and ammunition may be easily lost although the troops are required to clean the area of ammunition and debris before leaving or on the following day. Records are kept of the issuance, use and return of ordinance material. Even empty boxes are required to be turned back.

There was evidence that certain persons living in the vicinity of the Fort and within the area where the Porters lived, made a practice of going on the range within the Fort in order to pick up exploded or live ammunition and other ordinance material which they would burn in order to pick out the brass and other metals and sell them to junk dealers. Sometimes the brasspickers, as they were called, moved into the reservation at night as soon as the firing ceased and before the debris could be cleaned away the next day. Some of the material taken by the brasspickers proved unsalable. The Army made efforts to prevent brasspicking and some of the offenders were imprisoned. Two brasspickers were killed on the range.

Under these circumstances the District Judge concluded that the plaintiffs had failed to meet the burden of proof that the fuse which caused the injury had been deposited on the roadside dump as the result of the wrongful act or omission

of Army personnel or any one acting with its authority. We are in accord with this conclusion. See United States v. Inmon, 5 Cir., 205 F.2d 681; Rolon v. United States, D.C.P.R., 119 F.Supp. 432.

Affirmed.