## 19701

Lewis W. HOWELL and Mary Howell, Appellants, v. James D. HAIRSTON and Sharon Hairston, Respondents.

(199 S. E. (2d) 766)

*Messrs. Townsend & Thompson,* of Laurens, *for Appellants'* cite:

*W. Paul Culbertson, Esq.,* of *Culbertson & Whitesides,* Laurens, *for Respondents,* cites:

October 9, 1973.

LITTLEJOHN, Justice:

Plaintiffs Lewis W. Howell and Mary Howell instituted this action to recover actual damages sustained by them as a result of having to provide medical care to their son Bruce on account of his being shot in the eye with an air rifle by

Bob Hairston, son of the defendants, James D. Hairston and Sharon Hairston. The plaintiffs appeal from the order of the trial judge granting the defendants' motion for a nonsuit.

The primary issue to be decided is whether the trial judge erred in granting the nonsuit. Because we answer this question in the affirmative, it is also necessary for us to resolve two additional issues which may arise at the new trial. The first concerns the admissibility of Mr. Howell's testimony that the defendants paid the plaintiffs $100.00 in partial payment of the medical expenses the latter incurred for the treatment of their son's eye; the second, whether the trial judge properly struck from the complaint an allegation that an air rifle is a dangerous instrumentality.

The complaint alleges that the defendants were negligent (1) in supplying an air rifle to their son without properly instructing him relative to the use thereof, (2) in knowingly permitting the use of the air rifle by their son upon the public playground of Lydia Mill without proper supervision, (3) in failing to exercise proper control of the use of the air rifle which they knew or should have known was being used in an unsafe manner, and (4) in entrusting the air rifle to their son when they knew or should have known that he was possessed with a malicious character and disposition and when they knew or should have known he was likely to fire the air rifle at other children.

The answer of the defendants is in essence a general denial; however, it admits that the defendants purchased an air rifle for their son prior to the date of the injury and that Bruce Howell was injured on June 27, 1972.

In considering whether a defendant is entitled to a nonsuit, the evidence and all inferences reasonably deducible therefrom should be viewed in the light most favorable to the plaintiff. If more than one reasonable inference can be drawn therefrom or if the inferences to be drawn from the testimony are in doubt, the case should be

submitted to the jury. Cases collected, 18 South Carolina Digest Trial § 165 (1962, Supp. 1972). We review the evidence in the light of this rule to determine if a jury issue was made out on the negligence question.

Bob Hairston was eleven years of age and Bruce Howell was nine when the incident occurred. The families of both lived in close proximity to the playground where the shooting took place and where both boys and other small children were accustomed to play. The playground was used by the neighborhood children on a regular basis, especially during the summer months. There were no facilities for the shooting of air rifles.

Both Mr. and Mrs. Hairston were away from their home during the day at their respective employments. They employed a maid; however, the testimony discloses that the maid did not really supervise the Hairston children, nor did she go outside the home to watch them. It is inferable that the son was at liberty on this day to take his air rifle and play where he chose. He was not accompanied by his parents nor by the maid on the playground. It is clearly inferable that he intentionally shot Bruce Howell.

Mr. Howell testified that subsequent to the shooting, Mrs. Hairston told him "that she had tried to get Mr. Hairston to put these BB guns in the attic before someone got hurt with them," but he had not done so. Such statement was susceptible of the inference that the Hairstons knew that under the circumstances their son should not have been allowed unsupervised possession of an air rifle.

Without exception, all of the plaintiff's witnesses who were examined in regard to Bob's reputation characterized it as bad or described Bob as a "bully" or in like terminology depicting aggressive and malicious tendencies. Liability for injuries inflicted by a minor with a gun may be predicated on the fact that the parents permitted the minor to have the gun, knowing the minor was

of a reckless or malignant disposition. Annot., 68 A. L. R. (2d) 793 (1959).

It appears that the trial judge was of the opinion that it was incumbent upon the Howells to show that the Hairstons had first-hand knowledge of Bob's reputation. Such is not the case. The question is whether the parents knew or should have known the reputation of their child. If it was part of the general reputation of this boy that he was possessed of a malicious disposition, his parents would be chargeable with notice of such. *Highsaw v. Creech,* 17 Tenn. App. 573, 69 S. W. (2d) 249 (1933) ; *Capps v. Carpenter,* 129 Kan. 462, 283 P. 655 (1930). "Where particular knowledge of a fact is sought to be brought home to a party, evidence of the general reputation and belief of the existence of that fact among his neighbors is admissible as tending to show that he also had knowledge of the same matter." 29 Am. Jur. (2d) Evidence § 504 (1967).

In order to make a jury issue on a negligence question, it is not necessary that a plaintiff prove all of the specifications of negligence set forth in the complaint; it is sufficient if evidence in support of one specification be submitted. Whether one is negligent or prudent depends in large measure on all of the surrounding circumstances, and failure to use due care, amounting to negligence, may be proved by direct as well as by circumstantial evidence. In order to hold the parents of Bob Hairston liable, evidence must be submitted tending to prove that a prudent parent would not have entrusted Bob Hairston with an air rifle under the same or similar circumstances. A parent might be justified in entrusting an air rifle to a particular child while residing in a thinly populated rural area; the same parent might not be justified in entrusting an air rifle to the same child in a thickly populated area where children are accustomed to play.

From the evidence to which reference has been made above, an inference can reasonably be drawn that the Hairstons failed to act as reasonably prudent

parents under the circumstances. Accordingly the plaintiffs are entitled to a new trial.

The plaintiffs also contend that the trial judge should have excluded testimony of Mr. Howell that the defendants paid the plaintiffs $100.00 in partial payment of the medical expenses incurred in the treatment of Bruce's eye. Although there is some authority to the contrary, the cases have generally held evidence of payment, or offer or promise of payment, of medical, hospital, and similar expenses of an injured party by the opposing party, inadmissible. Annot., 20 A. L. R. (2d) 291 (1951) ; 29 Am. Jur. (2d) Evidence § 624 (1967).

Although we have not had the opportunity to rule on the precise issue thus presented, we have held that evidence that an agent has paid third persons on claims arising from the same transaction is inadmissible as an admission of liability in a negligence action against the principal. *Rookard v. Atlanta & C. Air Line Ry. Co.,* 84 S. C. 190, 65 S. E. 1047 (1909).

The Howells call our attention to this Court's decision in *Neal v. Clark,* 199 S. C. 316, 19 S. E. (2d) 473 (1943). The *Neal* case is distinguishable upon its facts from the instant case in that it was an action to recover an amount which the defendant allegedly owed the plaintiff under a family settlement agreement, and its holding is inapplicable hereto.

The Howells also make reference to the fact that an exception to the general rule alluded to above is recognized in some jurisdictions where such payment is accompanied by an admission of liability or the surrounding circumstances indicate such an admission. They rely upon *Brown v. Wood,* 201 N.C. 309, 160 S. E. 281 (1931). The holding therein does not rest on the fact that the defendant gave the plaintiff a check to be applied to his medical expenses, but rather because the defendant additionally promised to see "that everything was all right." The North Carolina Court re-

cognized that the fact that a defendant paid the hospital bill is not an admission tending to impose liability, but concluded that the additional promise produced an issue of fact for the jury, since it was susceptible of the broader interpretation that the defendant agreed to pay not only the plaintiff's hospital bill but for all damages sustained by the plaintiff as a result of his injuries. It is thus distinguishable from the facts at hand.

While we are not holding that evidence of payment of medical expenses is never admissible, we do conclude that the evidence does not present a proper case to recognize an exception to the general rule that such evidence is inadmissible. The record discloses nothing accompanying the Hairstons' payment which could be construed as an admission of liability, nor do the surrounding circumstances indicate the payment, in itself, such an admission.

The final question presented by this appeal is whether the trial judge was correct in striking the plaintiff's characterization in the complaint of the air rifle as a dangerous instrumentality. Neither the briefs of the parties, nor our independent research discloses any helpful authority from this State, and there appears to be conflict in the decisions of other jurisdictions. Some courts have held an air rifle to be a dangerous instrumentality; others *contra Compare Phillips v. D'Amico,* 21 So. (2d) 748 (La. App. 1948) *with Peterson v. Rude,* 146 N. W. (2d) 555 (N. D. 1966).

Some instrumentalities are almost always, if not always, dangerous; for example, dynamite. On the other hand, some instrumentalities are almost always, if not always, not dangerous; for example, a powder puff. Many instrumentalities are dangerous or not dangerous because of their use or potential use under the circumstances. For example, a small pocketknife would normally not be designated a dangerous instrumentality, but if it, with an open blade, is given to a small child in a nursery, it might become a dangerous instrumentality.

It is not always possible to say that a particualr instrument is dangerous or not dangerous as a matter of law. We need not hold that an air rifle is a dangerous instrumentality to warrant the conclusion that the allegation should not have been stricken from the complaint. It is sufficient to warrant its inclusion in the complaint to say that a jury could reasonably conclude that an air rifle was a dangerous instrumentality under the conditions alleged. The plaintiffs should be allowed to allege and prove, if they can, that the air rifle was a dangerous instrumentality under the circumstances of this case. Whether or not the air rifle was a dangerous instrumentality is certainly relevant on the issue of entrustment.

We do not view this case as being one bottomed basically on the theory that an air rifle is a dangerous agency *per se,* but bottomed on the theory that it is an instrument of dangerous propensities and potentialities, and that it was negilgently entrusted by the defendants to a person who, on account of his youth and want of experience, was incapable of evaluating the dangerous incident to its use. One is liable for the consequences of his negligent acts if he proximately causes injuries to another whether the instrument used be dangerous or not. On the other hand, one may not normally be held liable for entrusting a non-dangerous instrumentality to another while being held liable for damages caused by reason of having entrusted a dangerous instrumentality to another. The allegation should not have been stricken.

Reversed and remanded.

Moss, C. J., AND LEWIS, BUSSEY AND BRAILSFORD, JJ., concur.