**Lillie L. EPPS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 0:91–1027–19.**

United States District Court,
D. South Carolina,
Rock Hill Division.

Oct. 4, 1994.

Melvin Lee Roberts, of Melvin L. Roberts & Associates, York, SC, for plaintiff.

Marvin J. Caughman, and John Berkley Grimball, Asst. U.S. Attys., Columbia, SC, for defendant.

## *ORDER*

SHEDD, District Judge.

Plaintiff has brought this negligence action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, seeking to recover damages for injuries she sustained as a result of an incident in which she fell on a public sidewalk which abuts the former United States Post Office ("post office") in Fort Mill, South Carolina. On August 10 and 12, 1994, the Court tried this action without a jury.[1] After carefully reviewing the record and the controlling legal authorities, the Court concludes that defendant is entitled to judgment. The following findings of fact and conclusions of law, made pursuant to Rule 52

---

1. Prior to trial, the parties stipulated to certain relevant facts, which the Court has accepted as part of the record.

of the Federal Rules of Civil Procedure, detail the basis for the Court's conclusion.[2]

## I. Findings Of Fact

On August 30, 1989, at approximately 9:00 p.m., plaintiff went to the post office, which was located on the corner of Spring Street and Tom Hall Street in the town of Fort Mill to check her post office box. At that time, the post office was closed, but the area in which the post office boxes were located was open for the convenience of persons to whom the boxes were leased. After parking her car on Spring Street, just north of the post office entrance, plaintiff exited her car, stepped up onto the curb, and started walking on a public sidewalk which abuts the post office. As plaintiff was walking on the sidewalk towards the entrance of the post office, she stepped on a clear plastic band which caught her feet and caused her to fall.

The location of plaintiff's fall is on a public sidewalk, approximately three feet off of the premises leased by the post office.[3] Defendant does not control this area. On the night of plaintiff's fall, the area around the entrance of the post office was illuminated by light shining from the post office lobby, a spotlight on the front left corner of the post office building, and a streetlight across the street.

The clear plastic band which caused plaintiff to fall is the type of band which was used to bundle mail that was delivered to the post office. At the time of plaintiff's fall, it was post office procedure to take mail that had been delivered to the post office to a distribution and work area in a back room, separate from the customer area of the post office, where postal employees cut the plastic bands and sorted the mail. Because postal employees knew that the plastic bands, when uncut and not around mail, were a trip hazard, it was post office policy to discipline employees if they failed to cut the plastic bands when removing mail therefrom.[4] One exception to

this mail sorting procedure was for "firm mail," which is mail addressed to recipients of large amounts of mail. With regard to firm mail, postal employees left the mail bound in the plastic bands and allowed couriers to take it out of the back door of the post office. However, postal employees did not allow mail bound in plastic bands to be taken out the front door of the post office, and they did not place mail bound in plastic bands in any of the individual post office boxes. While there is no evidence to establish how the clear plastic band which caused plaintiff's fall came to be upon the sidewalk, the Court finds that it did come from the post office.

The Postmaster of the Fort Mill Post Office at the time of plaintiff's accident, John Harrison, was responsible for ensuring that all areas outside and inside the premises of the post office were inspected and kept clean. Mr. Harrison's daily routine was to inspect the premises when he came on duty in the morning and again at approximately 6:00 p.m., when he left for the day. Mr. Harrison followed this routine on the day plaintiff fell. While Mr. Harrison never found any uncut plastic bands on or around the premises prior to plaintiff's fall, he occasionally found cut bands near a trash dumpster behind the post office, and he found other debris outside the post office. Mr. Harrison knew of no other accidents or falls on or near the premises of the post office prior to the plaintiff's fall.

As a result of her fall, plaintiff sustained injuries and incurred medical expenses in the amount of $7,533.25. Prior to commencing this action, plaintiff filed an administrative claim with the United States Postal Service, which denied her claim on April 11, 1990. Plaintiff thereafter filed this action alleging that defendant was negligent in: (1) failing to provide adequate lighting at or near the entrance to the post office premises; (2) allowing plastic bands to litter the entrance of the post office; (3) failing to remove the plastic band from the entrance to the post office

---

**2.** Any designated finding of fact which more properly constitutes a conclusion of law should be so treated. Likewise, any designated conclusion of law which more properly constitutes a finding of fact should be so treated.

**3.** Although defendant leased, rather than owned the post office premises, that fact is irrelevant to the determination of this action.

**4.** At the time of plaintiff's accident, no postal employees had been disciplined for failing to cut the plastic bands at the Fort Mill Post Office.

premises; (4) failing to instruct and train postal employees to keep the plastic bands in work areas in the post office; (5) failing to use safeguards to prevent the plastic bands from being left at the entrance to the post office; and (6) failing to keep the post office premises clear of plastic bands and otherwise safe.

## II. Conclusions Of Law

The FTCA provides *inter alia* that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. Plaintiff has properly exhausted her administrative remedies under the FTCA; *see* 28 U.S.C. § 2675; and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b). Because plaintiff's injury occurred in South Carolina, the Court must apply South Carolina law in this case. *See* 28 U.S.C. §§ 1346(b), 2674.

 Under South Carolina law, negligence is defined as "the failure to use due care; that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances." *Hart v. Doe*, 261 S.C. 116, 198 S.E.2d 526, 529 (1973). In order to prevail on her claim of negligence, plaintiff must prove three elements: (1) the existence of a legal duty of care on the part of defendant to protect her; (2) defendant's failure to discharge that duty; and (3) injury proximately resulting from defendant's failure to perform its duty. *South Carolina State Ports Auth. v. Booz–Allen & Hamilton, Inc.*, 289 S.C. 373, 346 S.E.2d 324, 325 (1986). "The absence of any one of these elements renders the cause of action insufficient." *Id.*

 The initial inquiry in any negligence case is whether the defendant owed a legal duty of care to protect the plaintiff. "A legal duty is that which the law requires to be done or forborne with respect to a particular individual or the public at large." *Byerly v. Connor*, 307 S.C. 441, 415 S.E.2d 796, 798 (1992). "It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care." *Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797, 803 (S.C.App.1991), *cert. denied* (S.C.1992). "Generally, there is no common law duty to act," *Jensen v. Anderson County D.S.S.*, 304 S.C. 195, 403 S.E.2d 615, 617 (1991); and, therefore, a duty normally arises by statute, contract, relationship, status, property interest, or other special circumstances. *Byerly*, 415 S.E.2d at 798.

Plaintiff's allegations of negligence can be pared down to two issues. First, plaintiff contends that defendant negligently failed to maintain the safety of the sidewalk by not properly lighting it and by not removing the plastic band upon which she fell from the sidewalk. Second, plaintiff contends that defendant negligently allowed the uncut plastic band upon which she fell to leave the work areas of the post office. The former issue presupposes that defendant had a legal duty to maintain the safety of the sidewalk, while the latter issue presupposes that defendant had a legal duty to keep all uncut plastic bands from leaving the post office work areas. As set forth below, the Court finds that neither of these alleged legal duties existed and, therefore, plaintiff's claims must fail as a matter of law.

### A.

 The Court will first address plaintiff's claim that defendant had a legal duty to maintain the safety of the public sidewalk abutting the post office premises. Initially, the Court notes that under South Carolina law, a public sidewalk is considered to be part of the street or highway, *see* S.C.Code Ann. § 56–5–480; *Burke v. Davidson*, 298 S.C. 370, 380 S.E.2d 839, 840 (S.C.App.1989); and the General Assembly of South Carolina has imposed upon towns and municipalities a duty to keep all public streets, ways, and bridges within the limits therein in good repair. S.C.Code Ann. §§ 5–27–110, –120. Additionally, the state supreme court has held that pedestrians have the right to assume that public sidewalks are maintained by the appropriate governmental entity in rea-

sonably safe condition for public use, *Kelley v. City of Aiken*, 245 S.C. 503, 141 S.E.2d 651, 653 (1965); and that court has recognized that:

> "The general rule in this country is that municipalities which have full and complete control over the streets and highways within their corporate limits are liable in damages for injuries sustained in consequence of their failure to use reasonable care to keep them in a reasonably safe condition for public travel."

*Terrell v. City of Orangeburg*, 176 S.C. 518, 180 S.E. 670, 672 (1935) (citation omitted), *overruled on other grounds* by *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741, 744 (1985) (abolishing sovereign immunity). Thus, there was clearly a legal duty on the part of the town of Fort Mill to maintain in a reasonably safe condition the sidewalk upon which plaintiff fell.

This fact does not, however, necessarily absolve defendant from any duty with respect to the safety of the sidewalk. *See Chambers v. Whelen*, 44 F.2d 340, 341 (4th Cir.1930) ("the fact that a duty is imposed upon public officials to maintain the safety of a street or highway does not necessarily absolve an abutting owner from duty with respect thereto"). Indeed, the state supreme court has recognized that "[i]n many jurisdictions it has been held that a municipality and an abutting landowner or occupier may be joined as defendants in an action for injuries resulting from defects in a sidewalk or highway where all are charged with a common duty to the traveling public, even though there may be no concert of action between them." *Hollifield v. Keller*, 238 S.C. 584, 121

S.E.2d 213, 216–17 (1961), *overruled on other grounds* by *Batson*, 329 S.E.2d at 744. While the *Hollifield* court recognized this principle, it did not directly hold that an abutting landowner or occupier has (or may have) a duty of care with respect to the safety of a public sidewalk.[5]

■ The general rule appears to be that an abutting landowner or occupier normally does not have a duty of care with respect to the safety of the sidewalk unless such a duty is imposed by legislation, the abutter created an unsafe condition on the sidewalk, or the abutter has a special property interest in the sidewalk. *See* 39 Am.Jur.2d *Highways, Streets, and Bridges* §. 365 (1968) ("An owner or occupant of land abutting on a highway, street, or sidewalk, who does not enjoy a private servitude in the way, does not, in the absence of statute or ordinance to the contrary, owe to the public a duty to keep the way in a safe condition, and is generally held not liable for injuries sustained by travelers thereon as a result of conditions which he has not been instrumental in creating or maintaining"); 40 C.J.S. *Highways* § 256 (1991) ("Ordinarily, an abutting owner is not liable for the condition of a sidewalk constituting a part of the highway in front of the premises in the absence of a duty created by statute or ordinance, such as for defective conditions which resulted from causes not traceable to him and which he had no legal duty to correct"). This is also the English common law rule, *see Stewart v. 104 Wallace Street, Inc.*, 87 N.J. 146, 432 A.2d 881, 885 (1981) (citing *The King v. Inhabitants of Sheffield*, 2 T.R. 106, 111, 100 E.R. 58, 61 (K.B. 1787));[6]

---

**5.** Because of the posture of the case, the *Hollifield* court did not squarely address the issue. In *Hollifield*, the plaintiffs (husband and wife) brought suit against both the city and individual defendants as a result of injuries they sustained when an automobile driven by the wife skidded out of control on a sheet of ice which had formed in the street. The plaintiffs alleged that the individual defendants were negligent in allowing water to flow from their premises onto the street, and the city was negligent in permitting the water to remain and freeze in the street. The trial court overruled the city's demurrer and, on appeal by the city, the question before the supreme court was whether a statutory cause of action against the city could be joined with a tort action against the individual defendants. Based

on the above-quoted principle, the supreme court held that the causes of action could be joined and, therefore, affirmed the trial court. 121 S.E.2d at 217.

**6.** In *Stewart*, the Supreme Court of New Jersey rejected the common law rule and held that "commercial [but not residential] landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." 432 A.2d at 887. While the Court has not surveyed the law in every state on this point, the Court notes that the Supreme Court of Delaware has expressly refused to follow *Stewart*. *See Eck v.*

which, although not necessarily binding, "ordinarily is presumed to govern if there is no South Carolina authority to the contrary." *State v. Sloan Constr. Co.,* 284 S.C. 491, 328 S.E.2d 84, 87 (S.C.App.1985); *see* S.C.Code Ann. § 14–1–50 ("All, and every part, of the common law of England, where it is not altered by the Code or inconsistent with the Constitution or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section").

While no South Carolina court appears to have squarely addressed the issue of whether an abutting landowner or occupier has a duty to maintain the public sidewalk in a safe condition, the appellate courts of this state have on several occasions refused to impose a duty on one whose land abuts a public highway to maintain that highway in a safe condition. For example, in *Morris v. Langley Mills,* 121 S.C. 200, 113 S.E. 632 (1922), which was a wrongful death action, the plaintiff's intestate drowned by falling from a causeway on a public highway in Aiken County into a pond which was on the premises of Langley Mills. The plaintiff sued both the county and Langley Mills, alleging that the cause of death was the defendants' negligent failure to erect and maintain proper safeguards to prevent persons using the causeway from falling into the pond. The trial judge *inter alia* directed a verdict in favor of Langley Mills and, on appeal, the supreme court affirmed, holding:

> The alleged delict upon which plaintiff's cause of action is based was the failure to erect and maintain proper safeguards to prevent falling from the causeway into the pond. *Since it is undisputed that the causeway was a part of the public highway, wholly under the jurisdiction and control of the defendant county, in the opinion of a majority of this court the duty, if any, to prevent falling from the causeway into the pond rested upon the county, and not upon the defendant Langley Mills.*

*Id.,* 113 S.E. at 633 (emphasis added).

Similarly, in *Dunbar v. Charleston & Western Carolina Railway Company,* 211 S.C. 209, 44 S.E.2d 314 (1947), the plaintiff was involved in an automobile accident on a public highway which crossed the defendant railroad's right-of-way and connected two other public highways. The plaintiff alleged that the accident occurred because the conditions at the point of intersection between the crossing and one of the highways required a motorist to enter that highway in a dangerous manner, and that the defendant negligently permitted this condition to exist. The trial court sustained the defendant's demurrer and the supreme court affirmed, stating in pertinent part:

> There is nothing in the record to show whether the road crossing the defendant's right-of-way was constructed before [or] after that of the parallel highway; however, the real test is one of control. Did the defendant railway company have any control of the manner of construction and maintenance of this intersection. We think not.

> . . . . .

> *"The liability of an owner or occupant of real estate in reference to injuries caused by a dangerous or defective condition of the premises depends in general upon his having control of the property. In fact, such liability depends upon control, rather than ownership, of the premises."*

> . . . . .

> One cannot recover damages of another unless a failure to discharge some duty to the injured party is shown.

> Regardless of the view taken, we come back to the fact that here we have a collision between two motorists at a junction of two highways which were located by public authorities over which such authorities had and now have sole control. *The railroad*

---

*Birthright of Del., Inc.,* 559 A.2d 1227 (Del.1989). *Stewart* also appears to be contrary to the law of North Carolina. *See Laumann v. Plakakis,* 84 N.C.App. 131, 351 S.E.2d 765, 767 (1987) ("The duty owed by the business owner to his custom-

ers to keep his premises reasonably safe is extensive, but it only applies when the customer is on the business premises, or where the defendant through some affirmative action created the dangerous condition").

*company having no control or discretion in the location, construction or maintenance thereof, it is difficult to see how a collision occurring at this intersection of two highways is to be treated differently from one occurring at the intersections of any other two highways.*

*Id.,* 44 S.E. at 316–17 (citation omitted and emphasis added).

More recently, in *Mahle v. Wilson,* 283 S.C. 486, 323 S.E.2d 65 (S.C.App.1984), the plaintiff was struck by an automobile while crossing the public highway from a skating rink which fronted on the highway and which was operated by one of the defendants, Fun Wheels, Inc. The plaintiff alleged that Fun Wheels was negligent in (1) failing to provide adequate lighting on or near its premises; (2) failing to provide an adequate and lighted parking area; (3) allowing cars to park on the shoulder of the public highway opposite the skating rink; (4) failing to request posted speed limit signs; (5) failing to request or to provide a pedestrian crosswalk; and (6) failing to post a warning signal or traffic control device on or near its premises. The trial judge sustained Fun Wheel's demurrer, and the question presented to the court of appeals was "what duty, if any, an adjoining property owner owes to one injured on a public highway adjacent to his property." *Id.,* 323 S.E. at 66. The court of appeals affirmed the trial court, concluding that Fun Wheels did not owe any duty with respect to any of the plaintiff's allegations. *Id.* In reaching this conclusion, the court of appeals appears to have at least implicitly considered it significant that Fun Wheels did not control the area upon which the plaintiff was injured.

The case of *Winburn v. United States,* 334 F.Supp. 682 (D.S.C.1971), appears to be the most closely analogous South Carolina case from a factual standpoint, and the holding there is consistent with the cases cited above. In *Winburn,* the plaintiff sought damages which resulted from a fall she suffered while exiting a county building in which a temporary Social Security Administration ("SSA") office, among other offices, was located. While the plaintiff had visited the building to meet with an SSA representative, the building was generally used for county purposes, and the SSA asserted no control over the building other than the room which it occasionally occupied. Following trial, the court entered judgment in favor of the United States, holding in pertinent part:

It is clear that the area where Mrs. Winburn fell at the Darlington County Health Building is owned, maintained, and controlled by Darlington County, and not by the Social Security Administration or any agent of the United States of America. *The United States of America had and exercised no control, nor authority over this area of the fall by the plaintiff.*

*Id.* at 685 (emphasis added).

An additional case which is worthy of note is *Bryant v. City of North Charleston,* 304 S.C. 123, 403 S.E.2d 159 (S.C.App.), *cert. denied* (S.C.1991); in which the plaintiff sued the City of North Charleston for negligence alleging that she was injured when she fell into an unguarded hole on a city sidewalk. Following a verdict in favor of the plaintiff, the City appealed, arguing *inter alia* that "because it did not own or maintain the sidewalk where [the plaintiff] fell, it did not owe her any legal duty." *Id.,* 403 S.E. at 160–61. The court of appeals rejected the City's argument, finding that even if the City did not own the sidewalk, there was sufficient evidence in the record to establish that the City assumed the duty for its maintenance. *Id.,* 403 S.E. at 161. Implicit in this decision is the court of appeals' recognition that the duty to maintain the safety of a sidewalk generally rests upon the party who owns or controls the sidewalk. *See also Milligan v. Winn–Dixie Raleigh, Inc.,* 273 S.C. 118, 254 S.E.2d 798, 799 (1979) (in slip and fall action based premises liability, court began its analysis by initially assuming *arguendo* that the defendant controlled a portion of common sidewalk upon which the plaintiff fell).

■ As noted, a legal duty for purposes of negligence liability normally arises by statute, contract, relationship, status, property interest, or other special circumstances. Plaintiff has not cited, and the Court has not found, any statutory or other legislative authority which imposes a duty upon abutting property owners or occupiers to maintain a public sidewalk. Likewise, plaintiff has not

presented any contractual obligation or other relationship which would give rise to such a duty in this case. While at least one court has considered the commercial status of an abutter sufficient to create a duty, *see Stewart*, the decision of the court in *Mahle*, which clearly involved a commercial entity, implicitly rejects this concept of liability. Moreover, no South Carolina court appears to have applied rationale similar to that of *Stewart* in the context of a negligence action, and the Court declines to do so here.[7] Therefore, the crux of this issue appears from authorities cited above to be whether defendant had a property interest in the sidewalk which is sufficient to trigger a duty to maintain it in a safe condition, or whether special circumstances exist so as to trigger such a duty.

With respect to the question of whether defendant had a sufficient property interest in the sidewalk, the Court concludes that it did not. The South Carolina cases cited above, particularly *Morris* and *Dunbar*, expressly direct that unless the abutting property owner or occupier has *control* over the public way, then the abutter is under no duty to maintain the safety of the way simply because its property abuts the way. There is no evidence in the record to establish that defendant had any control over the sidewalk upon which plaintiff fell.

Likewise, the Court concludes that there are no special circumstances which would give rise to a duty of care on the part of defendant. While the plastic band which caused plaintiff's fall came from defendant's premises, there is no evidence in the record to establish that defendant was in any way responsible for, or had knowledge of, its presence on the sidewalk. In this regard, this case is distinguishable from cases such as *Hollifield* and *Israel*, since the landowners or occupiers in those cases either created a hazard on the abutting or adjacent premises, or they allowed a hazardous condition to exist on their property which caused harm on the abutting or adjacent property. The situations in those cases are entirely consistent with the general rule cited above, in which a duty of care is imposed upon the abutting landowner or occupier where it has created or maintained a hazard on the sidewalk, or the hazard is otherwise legally traceable to it.[8] Moreover, unlike the situation in *Bryant*, there is no evidence in the record to establish that defendant assumed the duty to maintain the safety of the sidewalk.[9]

In light of the foregoing, the Court concludes that defendant did not owe a legal duty to maintain the safety of the sidewalk upon which plaintiff fell. Accordingly, plaintiff's allegations concerning defendant's failure to properly light the sidewalk and to

7. In *Israel v. Carolina Bar–B–Que, Inc.*, 292 S.C. 282, 356 S.E.2d 123, 127 (S.C.App.), *cert. denied*, 293 S.C. 406, 360 S.E.2d 824 (1987); the court of appeals held *inter alia* that "a landowner in a residential or urban area has a duty to others outside of his land to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on his premises, including trees of purely natural origin." While the court of appeals in *Israel* thus recognized a distinction between incidents which occur in urban or residential areas rather than in rural areas, that case is not inconsistent with this Order.

8. The fact that the plastic band came from the post office, without more, is not sufficient to impose liability on defendant. This point is illustrated by the case of *Porter v. United States*, 228 F.2d 389 (4th Cir.1955), in which the plaintiff sued the United States for injuries he suffered as a result of the explosion of an ordinance detonator at a roadside dump near Fort Jackson. The district court entered judgment in favor of the

United States, and the Fourth Circuit affirmed, holding that under the circumstances of the case, "the plaintiffs had failed to meet the burden of proof that the fuse which caused the injury had been deposited on the roadside dump as the result of the wrongful act or omission of Army personnel or any one [sic] acting within its authority." *Id.* at 390–91. The Court finds the circumstances of this case to be similar in material respects to those in *Porter*.

9. *Bryant* is premised on the principle that "even where there is no duty to act but an act is voluntarily undertaken, the actor assumes the duty to use due care." *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338, 339 (1991). While defendant inspected the outside of its premises on a daily basis, its conduct does not rise to the level which can be held to create a legal duty to ensure the safety of the public sidewalk. In any event, Mr. Harrison's action in inspecting and cleaning the sidewalk twice a day, including once after the post office operations have closed, constitutes due care.

keep it clear of plastic bands cannot support her cause of action for negligence.

**B.**

The Court now turns to plaintiff's contention that defendant was negligent because it allowed an uncut plastic band to leave the work areas of the post office. It is clear that the plastic bands, when uncut and separated from mail, were a trip hazard that was known to postal employees. Indeed, that is why the post office had a policy of disciplining employees who failed to cut the bands when removing mail therefrom, and this policy, although not determinative, can be considered as evidence of whether a legal duty of care existed in this regard. *See Araujo v. Southern Bell Tel. & Tel. Co.*, 291 S.C. 54, 351 S.E.2d 908, 910 (S.C.App.1986) ("company rules are admissible as evidence of negligence, but ... the question of whether a defendant owes a duty, the breach of which may constitute negligence, is a question of law, not fact"). However, it is equally clear that the uncut plastic bands were *only* a trip hazard when they were separated from mail. When the plastic bands were "in use"—that is, when they were not separated from mail—they were not a trip hazard.

In *Howell v. Hairston*, 261 S.C. 292, 199 S.E.2d 766, 770 (1973), the state supreme court recognized:

> Some instrumentalities are almost always, if not always, dangerous; for example, dynamite. On the other hand, some instrumentalities are almost always, if not always, not dangerous; for example, a powder puff. Many instrumentalities are dangerous or not dangerous because of their use or potential use under the circumstances. For example, a small pocketknife would normally not be designated a dangerous instrumentality, but if it, with an open blade, is given to a small child in a nursery, it might become a dangerous instrumentality.

"It is not always possible to say that a particular instrument is dangerous or not dangerous as a matter of law." *Id.* Instead, the particular facts and circumstances of each case are determinative in most, but not all, instances.

For example, in *Howell*, the parents of one child brought a negligence suit against the parents of another child to recover medical expenses incurred as a result of an incident in which the latter child shot the former child with an air rifle. On appeal from the trial court's grant of a non-suit in favor of the defendants, the state supreme court reversed. One aspect of the appeal involved whether the trial court should have stricken from the complaint an allegation that the air rifle was a dangerous instrumentality such that the defendants should not have allowed their child to possess it. The supreme court, after setting forth the above-quoted principle, held:

> We need not hold that an air rifle is a dangerous instrumentality to warrant the conclusion that the allegation should not have been stricken from the complaint. It is sufficient to warrant its inclusion in the complaint to say that a jury could reasonably conclude that an air rifle was a dangerous instrumentality *under the conditions alleged.* The plaintiffs should be allowed to allege and to prove, if they can, that the air rifle was a dangerous instrumentality *under the circumstances of this case.*

199 S.E.2d at 770 (emphasis added).

In a more recent case, *Dennis v. Timmons*, 437 S.E.2d 138, 140 (S.C.App.1993), the state court of appeals was presented with facts somewhat similar to those of *Howell*, in that one child, while playing with a screwdriver, injured another child. In a negligence action brought by the parents of the injured child against the other child and the owners of the screwdriver, the trial court directed a verdict in favor of the defendants, and the court of appeals affirmed. On appeal, one issue was whether the trial court properly ruled that the screwdriver was not a dangerous instrumentality as a matter of law. The court of appeals, after citing the general principle laid down in *Howell*, stated:

> We hold that a screwdriver is not an instrumentality which is almost always dangerous. A screwdriver is, of course, a common object which can be found in most homes. Although it is obviously possible

to use a screwdriver in such a manner that it becomes a dangerous instrumentality, such an object is not inherently likely to inflict serious bodily injury on another person unless it is intentionally used for that purpose or is handled in a reckless and dangerous manner.

437 S.E.2d at 140.

 Under the circumstances of this case, the Court concludes that although defendant may have had a legal duty to ensure that all uncut plastic bands which were separated from mail must remain in the post office work areas, a fact which the Court need not decide, it did not have a legal duty to ensure that all uncut plastic bands, *whether separated from mail or not*, must remain there. *See Byerly*, 415 S.E.2d at 799 (recognizing that party's legal duty may be limited to the circumstances surrounding its actions). Like the screwdriver at issue in *Dennis*, while it is obviously possible for the plastic bands to be used in a dangerous manner, a plastic band is not always almost dangerous—that is, it is "not inherently likely to inflict serious bodily injury on another unless it is intentionally used for that purpose or is handled in a reckless or dangerous manner." 437 S.E.2d at 140. Allowing couriers to pick up "firm mail" bound in the plastic bands as defendant did is neither reckless nor dangerous, but is simply an efficient means of providing mail service.

Because there is no evidence to establish how the plastic band which caused plaintiff's fall came to be upon the sidewalk, and because there was no legal duty on defendant's part to ensure that *all* uncut plastic bands remained in post office work areas, this claim must also fail as a matter of law. It would be a matter of pure speculation to hold that the plastic band was on the sidewalk as a result of a breach of legal duty by defendant, since it is entirely possible that the band left post office premises attached to firm mail and was thereafter removed by a courier.[10]

### III. Conclusion

Based on the foregoing, the Court hereby **ORDERS** on this the 29th day of September, 1994, at Columbia, South Carolina, that judgment be **ENTERED** in favor of defendant.

---

10. It must be remembered that there is no evidence that defendant had ever found an uncut plastic band outside of the post office prior to plaintiff's fall.