15204

INABINETT v. STATE HIGHWAY DEPARTMENT *ET AL.*

(12 S. E. (2d), 848)

118

Messrs. *John M. Daniel, Attorney General, M. J. Hough,* and *T. C. Callison, Assistant Attorneys General* and *Nathans & Sinkler,* for appellant,

Messrs. *J. C. Long* and *Arthur Rittenberg,* for respondent,

January 15, 1941.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

This action was brought originally against the State Highway Department and Miss H. R. Gonzales to recover damages for injuries received by plaintiff while traveling in an automobile on the highway which runs from Walterboro to Charleston. The Transcript of Record contains a fair

statement, and we copy it, although it is somewhat long and enters more into detail than is necessary:

"* * * The case was tried before a jury at the March-April, 1939, term of the Court of Common Pleas of Charleston County, and the plaintiff was awarded Four Thousand ($4,000.00) Dollars, in damages.

"The trial was a sequel to a tragic accident which took place on September 5, 1935, in which the plaintiff suffered severe personal injuries. The accident occurred between Adams Run and the Parkers Ferry Viaduct in Charleston County, and on the concrete highway leading from Charleston southwardly to Walterboro. The plaintiff was a passenger in an automobile which was returning from Walterboro to the Meggett section of Charleston County. She was sitting on the rear seat of the automobile. The plaintiff and her companions had been attending a funeral. The day was windy and it had rained intermittently from early morning. It was around three o'clock in the afternoon when the plaintiff and her companions arrived at a stretch of road bounding on both sides of the property of Miss H. R. Gonzales, who was also made defendant in this suit. For almost a mile the road runs through a very wooded area. Trees of every sort abound on each side of the road. The branches of many overhang the road. About the middle of this stretch, the plaintiff's automobile was forced to stop. A few yards ahead the road had been blocked by the falling of a very large oak tree across the road. As the driver of the plaintiff's car cut off the ignition another tree feel, this time across the automobile in which the plaintiff was riding. The tree crashed through the top of the automobile, pinning the plaintiff who had been leaning slightly forward against the interior of the automobile.

"It was with great difficulty that she was removed from the automobile. She was first taken to the hospital at Walterboro but was removed to the Roper Hospital in Charleston on the next day. She remained there for over seven months and since the time that she left the hospital has

been under treatment off and on. She suffered, among other things, a fracture of the first lumbar vertebra, causing a partial paralysis in her legs. At the time of the trial of the case she was quite lame and walked with difficulty.

"The tree which caused the injury was not located on the right-of-way of the Highway Department, but on property of Miss Gonzales. Even the plaintiff's witnesses conceded that the trunk of the tree was at least two inches south of the right-of-way line. One of plaintiff's witnesses testified, however, that one of the roots of the tree extended above the ground on the highway right-of-way for approximately two feet. The general contour of the land at this particular place is very low. To get to the tree one would have to go through a ditch on the right-of-way immediately south of the concrete road and across a barb-wire fence, evidently put up to designate the property line of Miss Gonzales, but at this particular place located a few inches over on the right-of-way.

"The tree was a gum of common variety. It was estimated to be from fifty to seventy-five feet in height. Its branches unquestionably must have extended over the right-of-way. Just above the ground and extending upward about eighteen inches it had a hole or decayed spot. The location of this decayed spot was on the south side of the tree and was not visible from the highway. After the tree had fallen, certain witnesses put up by the plaintiff testified that there were decayed branches lying around in the road and on the ground. The estimates of the size of these branches vary considerably, some witnesses describing them as twigs, while others testified that they were as much as two or three inches in diameter.

"The plaintiff offered testimony to show that the tree had been partially decayed for a long time. A tree expert, called by the plaintiff, testified that from his examination of the stump some time after the accident it appeared that the decayed portion extended from about the ground to about eighteen or twenty inches up the stump. He stated that the

decayed portion of the stump could be seen from the highway side from a distance of about two feet away and from the other side from a distance of about eight to ten feet away. He testified that in about ninety per cent. of the cases dead limbs at the top of the tree indicated that some of the roots are dead.

\*   \*   \*

"The action was originally brought against the State Highway Department of South Carolina and Miss Gonzales. At the conclusion of plaintiff's testimony both defendants made motions for a nonsuit. The motion made on behalf of the defendant, Miss Gonzales, was granted but that of the defendant, State Highway Department of South Carolina, was refused. At the conclusion of all the testimony, the defendant, State Highway Department of South Carolina, made an appropriate motion for a directed verdict. This was likewise refused,   \*   \*   \*."

The jury found for the plaintiff in the sum of Four Thousand ($4,000.00) Dollars. A motion for new trial was made and refused. From the refusal of the trial Court to grant the motions for nonsuit, directed verdict and new trial, the appeal comes to this Court.

Contrary to the tentative view held by the writer of this opinion after hearing this case on appeal, he is now of the opinion that the judgment of the lower Court must be affirmed. There is no issue of law involved in the appeal. There are no exceptions to the charge of the trial Judge. He correctly instructed that the defendant was not liable unless it had been shown that it was negligent, and that such negligence was the proximate cause of plaintiff's injury. He also correctly charged the law applicable to the pleas by defendant of "Act of God" and contributory negligence, and there is no appeal upon either of these grounds. Appellant comes to this Court upon four exceptions, which he elects to treat in his brief under three heads, thus stated:

"1. Is the State Highway Department liable for damages suffered by one injured by the falling of a tree situate outside of its right-of-way?

"2. Do the facts of this case show actionable negligence on the part of the State Highway Department?

"3. Has respondent's injuries been caused by an act of God in the form of a West Indian hurricane?"

The tree which fell and injured plaintiff was situated about two inches from the right-of-way; it was found to have a rotten place in it, a hole extending about 18 or 20 inches upward on the stump; there was evidence that there were dead limbs on the tree; there was evidence that these defects could be seen with the exercise of reasonable care on the part of those charged with seeing that the highway was kept reasonably safe for those traveling on it. There was evidence that the road where the accident occurred had been examined shortly before the accident and the condition of the tree was not discovered. There was contradictory testimony on the question whether the tree fell because of the effects of the hurricane. There was evidence that the tree was leaning towards, and some branches of it were over, the highway.

The trial Judge charged the jury that before the plaintiff could recover, she must satisfy the jury by the greater weight of the evidence that she was injured by the falling of a tree which was defective and that the defendant knew, or in the exercise of ordinary care or prudence should have known, that the said tree was defective, and that finally the falling of the tree was not due to an unusual or extraordinary atmospheric condition. To this there was no exception; it has become the law of the case. The charge leaves the jury to determine from the evidence whether the defendant knew, or with the exercise of ordinary, reasonable care, should have known, that the tree which fell and inflicted the injuries to plaintiff was in a condition which rendered it a menace, a danger, to travelers on the highway, and took no steps to remedy the danger.

In passing upon the motion of defendant for a directed verdict in its favor, his Honor said:

"* * * I think it is a question for the jury, under the circumstances and under the testimony here, to say whether the Highway Department knew, or by the exercise of ordinary care, would have known about the tree in question. To repeat the testimony of somebody here, it was testified that that tree was leaning over the road with dead limbs up there—big dead limbs. Of course that is all for the jury. I think it would be the duty of the Highway Department, if a tree is leaning over the road, to see that that tree was sound, and to remove the defect, if the defect was as detailed by some of the witnesses. That is all a question of fact. So I will have to let the case go to the jury.

"Now, so far as the act of God is concerned, I think that is a jury question, too. * * *"

It is settled that the tree which caused the injury was growing just off the highway, on the land of Miss Gonzales, within two inches of the line of her land. The question arose and was discussed whether the highway agents or employees could enter the land of Miss Gonzales and remove the tree. We think it is held by most of the Courts that such action is not a trespass, but falls within the scope of the duty of the Highway Department to keep the road safe for those who are lawfully upon it.

In the case of *Heath v. Town of Darlington,* 175 S. C., 27, 177 S. E., 894, this Court quotes from 13 R. C. L., 310: "The general rule in this country is that municipalities which have full and complete control over the streets and highways within their corporate limits are liable in damages for injuries sustained in consequence of their failure to use reasonable care to keep them in a reasonably safe condition for public travel."

We think Judge Greene was right when he said that if the Highway Department knew, or by the exercise of ordinary care would have known, of the condition of the tree, and we may add when it stood in such

proximity to the highway, it was its duty to remove it, or otherwise protect the safety of persons using the highway.

It is not to be understood that the highway officials may at their own free will enter upon the lands of others and cut trees, even for use on the highway, but we do say that if they know, or in the exercise of ordinary care in their duty of keeping the highway safe for public use should know, that a tree is dangerous to the safety of the public in its use of the highway, it is its duty to enter upon the land and remove the danger.

Respondent's counsel state in their brief:

■ "The rule is stated in the Restatement of the Law, Torts, Section 202, as follows:

" 'A public officer who, by virtue of his office or by statute, is authorized to abate a public nuisance is privileged at reasonable times and in a reasonable manner to enter land in the possession of another for the purpose of abating such a nuisance.' "

We think the rule as stated by us comports with common sense and reason, and is in accord with the requirement of the statutes which places upon the Highway Department the duty of keeping the highways of the State under its control, in a reasonably safe condition for the use of the public.

The exceptions are overruled and the judgment is affirmed.

Messrs. Justices Baker and Fishburne and Mr. Acting Associate Justice L. D. Lide concur.

Mr. Justice Stukes did not participate in this opinion.