0922

Charlotte H. ISRAEL, Respondent v. CAROLINA BAR-B-QUE, INC., and Andrew Berry, Trustee of Berrywoods Trust, Defendants, appellants being Carolina Bar-B-Que, Inc. and Berry Brothers Trust against which verdict was rendered, referred to in judgment as Andrew Berry, Trustee of Berry Brothers, Inc., Appellants.

(356 S. E. (2d) 123)

Court of Appeals

Berry Brothers Trust, pro se.

*Andrew Berry, trustee,* Orangeburg; *Charles E. Carpenter, Jr.,* and *R. Davis Howser, Richardson, Plowden, Grier & Howser,* Columbia, *for appellants.*

*James F. Walsh, Jr.,* Orangeburg, *for respondent.*

Heard Dec. 17, 1987.

Decided April 6, 1987.

GARDNER, Judge:

Charlotte H. Israel (Israel) sued for injuries she received on April 3, 1982, when a large limb from a tree on property owned by Andrew Berry, Trustee, fell over and onto the car in which Israel was seated and which was parked in the

parking area of a drive-in restaurant located on property of Carolina Bar-B-Que, Inc., (BBQ). The jury awarded an $80,000 verdict against both defendants; on post-verdict motions for a new trial nisi, the verdict was reduced to $60,000. We reverse as to BBQ and affirm as to Berry.

The Berry lot is 173 by 135 feet, on which there were a number of trees.[1] Some large water oaks, planted in or about 1911, were located about 25 to 30 feet from the BBQ property line. These trees had received a radical pruning in 1971. Pictures of record show visible signs of decay and rot in one of these trees.

Some smaller oaks, planted about 1955, were located some 4 to 10 feet from the property line, between the large water oaks and the BBQ parking lot. These trees were described as being bushy with some limbs overhanging BBQ property, and having trunks of no more than 12 inches in diameter. A picture of record shows these trees in their relation to the BBQ parking lot. BBQ's owner occasionally pruned branches off those trees which overhung his parking lot.

It appears undisputed that the limb which hit the car came from one of the large water oaks; the limb was described as having a diameter of between 12 and 25 inches. The limb was so large that the Israel car was, in effect, totally destroyed.

BBQ's manager testified that no limbs from the large tree were overhanging BBQ's property. He testified further that he noticed no decayed limbs on these trees. BBQ's owner testified similarly and further that the branches of the large trees were no closer than 15 feet from the BBQ property, and the limb which fell ran "parallel to the lot." He surmised that the high winds that day "pushed [the limb] out" onto the BBQ property. He also testified that when he later removed the trees on this lot, he discovered only one tree in "bad shape" and it was not the tree from which the limb fell.

Police Officer Terry M. Stevens investigated the accident and was Israel's key witness. He testified that the limb was a large limb about 25 feet long and that he saw a tree from which the limb apparently came. He, however, admitted that

---

[1] The owner of BBQ later purchased the lot and cleared all the trees from it around December 1983.

he could not testify that there was a decayed portion of the limb visible from the BBQ lot. We quote from the cross examination of Stevens:

Q. I am referring to the limb—
A. All right.
Q. —that you say apparently fell from the tree. Was there a decayed portion on the limb—
A. Yes, sir.
Q. —that would have been visible from the ground prior to the time that the limb fell?
A. That's kind of hard to say. As far as, you know, looking up. From where I was it would depend upon as to the position that the limb was in on the tree.
Q. So you don't know whether or not there was a decayed portion that could have been seen from the ground prior to the time that the limb fell?
A. No, sir, I don't. I cannot say that because I don't know the exact location, how it was stationed on the tree.

Stevens was standing on the BBQ lot. His testimony that the limb could not have been seen related to only the BBQ lot and not the Berry property; the tree could have been inspected from all views from the Berry property.

The only issues of merit presented are whether (1) the trial judge erred by allowing an amendment during trial by changing the name of Defendant Berry, Trustee of Berrywoods Trust, to Berry, Trustee of Berry Brothers Trust and (2) the trial judge erred in not directing a verdict as to the liability both as to BBQ and Berry.

First, we find no error in the trial judge's amending the capacity in which Berry was sued. The suit was commenced against Berry, Trustee of Berrywoods Trust. During the trial of the case, Israel's counsel made a motion to amend the pleadings to include as a defendant Andrew Berry, Trustee of Berry Brothers Trust, in addition to Andrew Berry, Trustee of Berrywoods Trust. Berry objected to this motion on the grounds that he was trying the case against Berrywoods Trust. The trial judge granted the motion to amend, by substituting Berry Brothers Trust for Berrywoods Trust, ruling "I am not catching anybody by surprise."

Later, the trial judge, although he decided against Berry on this issue, stated in his order settling the record:

At the time of the motion, I conceived of the motion as a clerical change to correct the identity of an incorrectly named party. Now, upon review of the actual motion as made and as granted, I recognize that instead of simply making a clerical correction I did in fact add an additional party defendant to the case in the middle of the trial and this may have been error.

The ruling of the trial judge was at the time controlled by Section 15-13-920,[2] Code of Laws of South Carolina (1976), which provides in pertinent part:

The court may, before or after judgment in furtherance of justice and on such terms as may be proper, amend any pleading, process or proceeding by (a) adding or striking out the name of any party. . . .

This section has been construed to allow amendments during or after trial only if the amendment does not substantially change the nature of the cause of action or the defense. *Gasque v. Voyager Life Ins. Co. of South Carolina*, 288 S. C. 629, 344 S. E. (2d) 182 (Ct. App. 1986); *Grist v. Caldwell*, 123 S. C. 240, 116 S. E. 448 (1923). It has been held that it is within the discretion of the court to allow an amendment to a complaint converting it from an action against a co-partnership to one against the individual members thereof. *Baker v. Hornik*, 51 S. C. 313, 28 S. E. 941 (1898). And there are many cases authorizing an amendment to show a correct corporate name where an incorrect name had previously been used. *Sentell v. Southern Railway Co.*, 67 S. C. 229, 45 S. E. 155 (1903); *see also* Section 15-13-920 and the cases cited in case note 23.

Berry admitted that as trustee for Berry Brothers Trust, it was his responsibility to manage and control the property. Berry was not taken by surprise; he knew the factual situation of the case; he knew it involved the falling limb from property which he managed and controlled. He was not taken by surprise by the factual situa-

---

[2] This statute was repealed by 1985 S. C. Acts No. 100 on July 1, 1985.

tion of the case, which was not changed by changing the capacity in which Berry was sued; and the nature of his defense was not changed.

Berry was the trustee in charge of management and control of the property although he was one of two or more trustees of the Berry Brothers Trust, who held the legal title of the property as co-tenants. We quote from 86 C.J.S. *Tenancy in Common* Section 143 (1975) the following:

> Tort. In an action sounding in tort, either all or any of the tenants in common as tort-feasors may be sued. Accordingly, where a tort has been committed by one tenant in common, for himself and as agent for his cotenants, within the scope of his agency, all of such cotenants are liable and may be made parties defendant. *On the other hand, where one of several tenants in common is in control of common property at the time of alleged negligence resulting in injuries to a third person, such tenant may be sued separately.* [Emphasis added.]

We find no merit to Berry's contention that Berry, as trustee for Berry Brothers Trust, was not served with a summons. Berry continued to defend the suit after the trial judge permitted the amendment to change the capacity in which Berry was sued. The voluntary appearance of a defendant is equivalent to personal service of a summons upon him. *See* Section 15-9-70, Code of Laws of South Carolina (1976),[3] which was in effect at the time of the trial of this case; *Stickland v. Consolidated Energy Products Co.*, 274 S. C. 554, 265 S. E. (2d) 682 (1980).

Under the above authorities, we find no error in the complained of amendment during the course of the trial and so hold.

This court in passing upon motions for directed verdict and post-verdict motions for a new trial absolute must view the evidence and all reasonable inferences therefrom in a light most favorable to the non-moving party. *Smith v. Harris-Teeter Supermarkets, Inc.*, 285 S. C. 445, 330 S. E. (2d) 316 (Ct. App. 1985).

We now address Berry's contention concerning liability. At common law Berry would not have been

---

[3] This statute was repealed by 1985 S. C. Acts No. 100 on July 1, 1985.

liable for a falling tree or limb. But under modern authorities, we think the liability does exist. We quote from Prosser and Keaton On the Law of Torts, Chapter 10, Section 57, at 391 (5th ed. 1984), the following:

> The rule of non-liability for natural conditions was obviously a practical necessity in the early days, when land was very largely in a primitive state. It remains to a considerable extent a necessity in rural communities, where the burden of inspecting and improving the land is likely to be entirely disproportionate not only to any threatened harm but even to the value of the land itself. But it is scarcely suited to cities, to say that a landowner may escape all liability for serious damage to his neighbors, merely by allowing nature to take its course. A different rule accordingly has been developed as to urban centers.
>
> This is well illustrated by the cases of dangerous trees. It is still the prevailing rule that the owner of rural land is not required to inspect it to make sure that every tree is safe, and will not fall over into the public highway and kill a person, although there is already some little dissent even as to this, and, at least if the defendant knows that the tree is dangerous, he may be required to take affirmative steps. But when the tree is in an urban area, and may fall into a city street, the landowner now has a duty of reasonable care, including inspection to make sure that the tree is safe. Recent decisions have extended the right to reasonable protection from travelers on the street *to adjoining landowners as well.* [Emphasis ours.]

Perhaps the leading case, the reasoning of which we adopt, on this point is *Mahurin v. Lockhart,* 71 Ill. App. (3d) 691, 28 Ill. Dec. 356, 390 N. E. (2d) 523 (1979), which holds that a landowner in a residential or urban area has a duty to others outside of his land to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on his premises, including trees of purely natural origin. We adopt this rule of duty as to Berry under the facts and circumstances of this case.

And we further hold that there is evidence of record

that the limb which fell on the Israel car was partially decayed. We further hold that there is evidence of record which supports the thesis that the limb's dangerous condition and the likelihood of its falling from the Berry lot, as opposed to the BBQ lot from which only a limited view was afforded, could have been observed by reasonable inspection on the part of Berry who was in charge of the property. The evidence of record supports the proposition that Berry should have been aware of the danger the decayed limb posed to persons on BBQ's lot. He testified that he visited the lot about 15 times each week, regularly parking his automobile there.

Accordingly, we affirm the trial judge's decision as to Berry's motion for a directed verdict and his post-verdict motions for a new trial absolute on the grounds of liability.

We next address BBQ's arguments as to liability. The general law of the land pertaining to a landowner's liability is succinctly set forth in 2 C.J.S. *Adjoining Landowners* Section 51 (1980), where it is stated that a landowner is not chargeable with negligence if he fails to take steps to make his property safe against invasion by or injury from a tree on adjoining land. The cases therein cited, however, are not cases involving a business whose invitees are injured and therefore, we hold, this rule is not conclusive as to BBQ. Our research, however, discloses no authority which would impose liability on BBQ under the circumstances of this case except highway cases. Numerous courts have held highway authorities liable for trees falling from adjoining property and injuring users of a highway.

Israel was BBQ's invitee. The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty. 65 C.J.S. *Negligence* Section 63(45) (1977).

No authority is required for the proposition that BBQ was not an insurer of its invitees and in the absence of negligence on the part of BBQ there is no liability. Negligence must be determined by whether BBQ exercised due care to assure the safety of invitees. The reasonable care required is measured by the ability of a reasonably prudent man to anticipate danger under the conditions known or

reasonably anticipated to exist. 65 C.J.S. *Negligence* Section 63(45) (1977). Proper application of this last rule is the fulcrum upon which BBQ's liability or non-liability is balanced.

Whether a landowner engaged in a business inviting ■ customers to his property is chargeable with negligence if he fails to take steps to make his property safe against injury to his invitees from a tree on adjoining property is a question novel to this state. But assuming that the landowner is liable, such liability has to be premised upon the breach of duty to anticipate a danger which the landowner knew or should have known of in the exercise of reasonable care.

With reference to the case in hand, there is no evi- ■ dence of record that the owner of BBQ either saw or could have seen from his property a dangerous situation with reference to the limb which caused Israel's injury.

Officer Stevens testified that he could not say that a decayed limb could be seen from the BBQ lot. A picture of record, Israel's exhibit #4, identified by Officer Stephens as mirroring the situation which existed on the day of the accident reflects that the water oaks on the Berry lot were largely obscured by the smaller oaks which had been planted near the boundary between the two lots. Another set of three pictures, Israel's exhibit # 5, do reflect a water oak in decaying condition. But there is no testimony as to the point from which these pictures were taken because when the pictures were made and by whom they were made were not disclosed at trial. Officer Stevens did testify that these three pictures (exhibit # 5) were of a tree which he remembered being near the boundary of the adjoining landowners. With the pictures in hand, however, Officer Stephens admitted that he could not testify that a decayed limb could have been seen from the BBQ lot. And, as we have noted, the large water oaks which produce limbs of 12 to 25 inches in diameter, as was the limb of this case, were some distance away from the boundary of the BBQ lot and from the BBQ lot were obscured by the smaller oaks planted near the boundary.

Next Israel argues that the three pictures (exhibit # 5) of a water oak which shows decay are sufficient evidence in

and of themselves to support the verdict as to BBQ. We disagree; exhibit # 4 discloses that from the BBQ lot the smaller oaks largely obscured the tree (exhibit # 5) from which the limb fell. Stephens' testimony was made with all four pictures before him; with this in mind the inescapable conclusion is that, the dangerous limb could not have been seen from the BBQ lot. The bare pictures themselves do not dispute this, and we so hold.

And, as stated, even if liability existed on the part of BBQ, this liability must be premised upon the visibility of the danger from the BBQ lot and we so hold. Since there is no evidence of record that the owner of BBQ or his agents could or should have seen an existing danger from the trees on the Berry lot, or from any point from which they had the right of entry, we hold that BBQ's motion for directed verdict should have been granted. Accordingly the judgment below is reversed as to BBQ.

For the reasons stated, the judgment below is reversed as to BBQ and affirmed as to Berry.

Affirmed in part and reversed in part.

SANDERS, C. J. and SHAW J., concur.