492 S.E.2d 811

**Evangeline M. FORD, individually, and as the Personal Representative of the Estate of Aaron D. Ford, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, James Robert Carroll and Mable O. Carroll, Respondents.**

**No. 2725.**

Court of Appeals of South Carolina.

Heard Sept. 10, 1997.

Decided Sept. 29, 1997.

Rehearing Denied Nov. 20, 1997.

---

482

L. Joel Chastain, of Ness, Motley, Loadholt, Richardson & Poole, of Barnwell; Jeffrey T. Eddy, of Ness, Motley, Loadholt, Richardson & Poole, of Charleston; and William H. Godbold, III, Rock Hill, for appellant.

Melvin B. McKeown, Jr., York, and John R. Murphy, of Murphy & Grantland; and William R. Calhoun, of Sweeny, Wingate, Murphy & Barrow, Columbia, for respondents.

GOOLSBY, Judge.

Evangeline M. Ford, individually, and as personal representative of the estate of Aaron D. Ford, appeals the grant of summary judgment to the South Carolina Department of

Transportation and Robert and Mable O. Carroll in this wrongful death action. We affirm as to the Carrolls, but reverse and remand as to the Department of Transportation.

## FACTS

On January 17, 1993, at about 5:00 a.m., Aaron D. Ford was driving south on State Road 185 when his car collided with a tree that had fallen across the road. Mr. Ford's car continued through the limbs of the tree and then veered off to his left and down an embankment adjacent to the road. Mr. Ford sustained severe head injuries and died as a result of the accident.

State Road 185, also known as Craig Farm Road, is a two-lane tar and gravel farm-to-market road in Lancaster County, South Carolina. The tree that had fallen across the road was a large, live, healthy hardwood tree of purely natural origin.[1] It had been completely uprooted before falling across the road. The Carroll property, where the tree had stood before it fell, consists of 99 acres of rural, undeveloped, heavily wooded land and is located on the east side of State Road 185. The tree stood in a low-lying natural drainage area approximately fifteen feet below the grade of the road. Its base was approximately 45 feet from the center of the road, 37 feet from the edge of the pavement, and 14 feet beyond the right-of-way of the Department of Transportation.

During the two months immediately preceding the accident, it rained almost every day and the ground was saturated. A storm had occurred during the night of January 16 or the early morning hours of January 17, 1993. According to one witness, there were no trees in the road as late as 1:00 a.m. on January 17, 1993.

Evangeline M. Ford, the widow of Aaron D. Ford, sued the Department of Transportation and the Carrolls for damages under South Carolina's Wrongful Death Act, S.C.Code Ann. §§ 15–51–10 through 15–51–60 (1976 and Supp.1996), alleging

---

1. Actually, two trees, a maple and a poplar, fell together, one on top of the other one. Apparently, they had been growing so closely together, that they appeared to have the same trunk. For the sake of convenience, references in this opinion will be to the "tree" rather than the "trees."

the defendants knew, or in the exercise of reasonable care should have known, the condition of the tree that fell across the road was such as to make it hazardous to persons in the immediate vicinity. In two separate orders, the trial court held Ford presented no evidence of a breach of duty by either the Carrolls or the Department of Transportation and granted summary judgment to both defendants.

Other facts will be discussed as they relate to the various issues on appeal.

## ANALYSIS

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. All evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences resolved in the same manner. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). Summary judgment should be withheld when inquiry into the facts is desirable to clarify the application of the law. *Hook v. Rothstein*, 275 S.C. 187, 268 S.E.2d 288 (1980).

The central controversy in this appeal is whether Ford presented any evidence showing the defendants had actual or constructive knowledge of the conditions leading to the accident. *See Simmons v. Winn–Dixie Greenville*, 318 S.C. 310, 457 S.E.2d 608 (1995) (a storekeeper is not liable for injuries resulting from a defective condition of the premises absent actual or constructive notice of the condition); *Inabinett v. State Highway Dep't*, 196 S.C. 117, 12 S.E.2d 848 (1941) (the Department of Transportation is not liable for injuries from a falling tree unless it had actual or constructive notice of the tree's condition). The issue of notice, however, depends on the particular duty of care with which each defendant is charged. *Cf. Norris v. Greenville, S. & A. Ry. Co.*, 111 S.C. 322, 97 S.E. 848 (1919) (mentioning due diligence as a factor in determining whether a party is presumed to have knowledge of undisclosed facts).

### A. Liability of the Carrolls

On appeal, Ford does not argue the Carrolls had actual knowledge of the hazard that led to the accident. The Car-

rolls' liability, therefore, depends on whether they had a duty of reasonable care, including the duty to inspect, to make sure their trees did not endanger a highway.

In *Israel v. Carolina Bar–B–Que, Inc.*, 292 S.C. 282, 356 S.E.2d 123 (Ct.App.1987), *cert. denied*, 293 S.C. 406, 360 S.E.2d 824 (1987), this court adopted the rule that a landowner in a residential or urban area has a duty to others outside the property to prevent an unreasonable risk of harm from defective or unsound trees on the premises. Neither this court nor the supreme court, however, has extended this duty to an owner of trees of natural origin growing on rural, undeveloped land. *Cf. Byrd v. Melton*, 259 S.C. 271, 191 S.E.2d 515 (1972) (upholding summary judgment to a landowner in an action arising from a child's drowning in a natural watercourse on undeveloped property); *Cantrell v. Green*, 302 S.C. 557, 397 S.E.2d 777 (Ct.App.1990) (absolving a rural landowner of liability for injuries resulting when a tractor rolled over on a hidden narrow on a plateau). We decline to extend the duty here. *See Cantrell*, 302 S.C. at 561, 397 S.E.2d at 779 (" 'The rule of non-liability for natural conditions remains to a considerable extent a necessity in rural communities, where the burden of inspecting and improving the land is likely to be entirely disproportionate not only to any threatened harm but even to the value of the land itself.' ") (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 57 at 391 (5th ed.1984)).

### B. Liability of the Department of Transportation

In granting summary judgment to the Department of Transportation, the trial court held Ford failed to present evidence that the Department had actual or constructive notice of the obstruction. In so holding, the trial court emphasized the absence of evidence of disease or decay. In addition, the Department argues the tree fell as the result of an act of God.

Viewing the record in the light most favorable to Ford, however, we find there was sufficient evidence to create an issue of fact as to whether the Department of Transportation would have had constructive, if not actual, notice of the hazard

leading to the accident had it adequately fulfilled the responsibility with which it was charged.

In South Carolina, the Department of Transportation can be held liable for damages caused by the fall of a tree standing within the limits of or in close proximity to a public highway. Liability depends on whether the Department knew, or in the exercise of reasonable care should have known, that the condition of the tree would make it hazardous to persons or property in the immediate vicinity. *Marsh v. South Carolina Dep't of Highways and Pub. Transp.,* 298 S.C. 420, 380 S.E.2d 867 (Ct.App.1989). This liability arises from the Department's duty to use reasonable care to keep streets and highways within its control in a reasonably safe condition for public travel. *Inabinett v. State Highway Dep't,* 196 S.C. 117, 12 S.E.2d 848 (1941). Moreover, even though a *landowner* is not liable to persons travelling on adjacent highways for harm resulting from natural conditions of the land, the *Department* has the privilege to enter the land and do what is necessary to remedy the harm resulting from such natural conditions. *Restatement (Second) of Torts* § 363 comment c (1965); *see also* § 202 (stating a public officer may enter private land to abate a public nuisance), *cited with approval in Inabinett,* 196 S.C. at 124, 12 S.E.2d at 851. The Department, therefore, because of its responsibility to the public, had a higher duty of care than did the Carrolls, to discover and remedy potential obstructions, even those obstructions originating on private property.

We agree with Ford that the absence of visible signs of disease or decay on the tree is not dispositive of the question of whether the Department knew or should have known the tree was a potential hazard for travellers along State Road 185. Although a leaning tree with no other signs of abnormalities would not necessarily give rise to a suspicion that the tree is unstable, there were additional circumstances creating an issue of fact as to whether the Department, in the exercise of reasonable care in discharging its duty to maintain its highways in a reasonably safe condition for public travel, should have discovered and remedied the dangerous condition that caused Mr. Ford's death.

As the Department states in its brief, the tree became completely uprooted because of rain over an extended period

of time and a storm occurring several hours before the accident. We disagree, however, with the Department's position that these circumstances establish an "act of God" defense in this case as a matter of law. Despite the extended period of heavy rains, employees of the Department were able to work in the area intermittently in the weeks immediately preceding the accident. Under these circumstances, there appears to be an issue of fact as to whether the heavy rains alone caused the accident or the Department's failure to detect and prevent the hazard, despite an opportunity to do so, was a contributing factor. *See Morgan v. Greenville County,* 189 S.C. 368, 1 S.E.2d 144 (1939) (an act of God is a valid defense only when it is the sole cause of the plaintiff's injury).

Billy Carnes, a Department foreman in charge of the maintenance crew responsible for maintaining part of State Road 185, testified his crew was responsible for removing hazardous trees hanging over the roads. He further testified the Department had a procedure in place for its crews to follow to remove hazardous trees outside the state right-of-way and had followed this procedure both before and after Hurricane Hugo. Documents submitted by the Highway Department indicate Carnes's crew worked on State Road 185 on at least a weekly basis during the period from September 1989 through June 1993. Furthermore, Carnes's crew would cut a tree if it was dead or leaning or if someone complained about it. Carnes further testified it was not a matter of discretion on his part to decide whether or not to remove a tree. Just before the accident, on January 14, 1993, Carnes's crew had been digging a ditch on State Road 185, and less than a week before that, on January 8, 1993, the crew had been patching holes in the road. Carnes further acknowledged the trees along State Road 185 appeared essentially the same as they did in a photograph taken of the accident site on the day of the accident. This photograph showed several trees, both on the right-of-way and on the Carroll property, leaning toward State Road 185.

Olin Kilman Pratt, who had lived in the vicinity of the accident between 1989 and 1993 and travelled State Road 185 daily, testified that during 1992 and 1993 he told the Department road crew about once a month that trees were falling onto the road and were dangerous. He also attempted to discuss the problem with a highway patrolman, who advised

him to complain to the road crew or his "senator." [2] Although Pratt never identified the particular tree in this case as a potential hazard, his testimony about his attempts to inform the road crew of the general problems of falling trees in the vicinity is competent evidence of constructive notice to the Department that the tree in question could pose a danger. *Cf. City of Phoenix v. Whiting*, 10 Ariz.App. 189, 457 P.2d 729 (1969) (stating evidence about the condition of adjoining trees had probative value on the issue of notice).

Based on the foregoing, we hold further inquiry into the facts is necessary to determine whether or not the Department, had it adequately performed its duty to the public, would have had notice of the potential hazard and the opportunity to remedy the hazard. Summary judgment for the Department was therefore premature.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CURETON and CONNOR, JJ., concur.

---

**2.** The Department argues Pratt's complaints to the road crew were ineffective notice because they were made to a subordinate employee. We disagree with this argument. None of the cases cited by the Department in support of this proposition is controlling authority in South Carolina. Furthermore, in response to an inquiry about the circumstances under which his crew would cut trees beyond a right-of-way, Billy Carnes answered that removal would take place upon either the road crew's notice of the tree or a citizen's complaint and mentioned nothing to the effect that a formal report to the Department was necessary.