494 S.E.2d 639

**Julie STAPLES, Appellant,**

v.

**Charles DUELL, d/b/a Middleton Place, Respondent.**

**No. 2756.**

Court of Appeals of South Carolina.

Heard Sept. 10, 1997.

Decided Nov. 24, 1997.

504

Daniel A. Beck, Charleston, for appellant.

Benjamin A. Moore, Jr., and James D. Myrick, of Buist, Moore, Smythe & McGee, Charleston, for respondent.

HOWELL, Chief Judge:

Julie Staples brought this suit against Charles Duell for damages arising out of an automobile accident that occurred near Duell's property on Highway 61. Both parties moved for a directed verdict. The trial judge denied Staples's motion, but granted Duell's motion, finding that Duell owed no duty of care to Staples. We affirm.

## I.

During the early morning hours of May 24, 1997, Staples was driving from Charleston toward Summerville on Highway 61. As she drove, Staples encountered a dead pine tree in the road. Staples swerved but collided with the tree, causing her to suffer multiple injuries.

The tree with which Staples collided was a dead pine measuring about 100 feet in length. The tree fell approximately sixty feet from the roadway and was located on land owned by Duell. For about two miles between Charleston and Summerville, Duell owns land on both sides of Highway 61. Along Duell's two mile stretch of Highway 61, there are no residences except one cabin. According to department of transportation records, approximately 13,500 vehicles a day pass by Duell's two-mile stretch of land on Highway 61.

Located on the property owned by Duell is Middleton Place National Historic Landmark. Part of Middleton Place is a tourist attraction which receives an estimated 100,000 admission-paying visitors a year. The only public entrance or exit to Middleton Place is on Highway 61. Duell maintains a two hundred and fifty foot buffer zone of trees on both sides of

Highway 61, to protect the scenic beauty of the road. The highway department owns a fifty foot right-of-way along Highway 61.

Duell employed James Woddle to "take care of the woodlands and security" for Middleton Place. Woddle's job duties included twice a day driving around the perimeter of Middleton Place to inspect the premises. During his inspections, Woddle looked for trespassers, abandoned vehicles, and dead trees.

In granting Duell's motion for a directed verdict, the trial court held that because the land from which the tree fell was rural, Duell had no common law duty to prevent the dangerous condition caused by the dead pine tree. The trial court further concluded that even if Duell adopted a policy of searching for dead trees along the roadway, Duell's policy did not create a duty because Duell could have abandoned it at any time and it did not increase the risk. Staples appeals the trial court's decision to grant Duell's motion for a directed verdict.

## II.

"In deciding a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. If more than one inference can be drawn from the evidence, the case must be submitted to the jury.... [I]f the evidence yields only one inference, a directed verdict in favor of the moving party is proper." *Tumblin v. Ball–Incon Glass Packaging Corp.*, 324 S.C. 359, 365, 478 S.E.2d 81, 84 (Ct.App.1996).

To prevail on a theory of negligence, the plaintiff must establish three elements: (1) that defendant owed plaintiff a duty of care; (2) that by some act or omission, defendant breached that duty; and (3) that as a proximate result of the breach, the plaintiff suffered damage. *Estate of Cantrell v. Green*, 302 S.C. 557, 397 S.E.2d 777 (Ct.App.1990).

The issue of negligence is a mixed question of law and fact. The court must first determine whether a duty arises in one party to exercise reasonable care for the benefit of another under the facts of a given case. The existence and

scope of the duty are questions of law. Thereafter, the jury determines whether a breach of the duty has occurred, and the resulting damages.

*Miller v. City of Camden,* 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994), *cert. granted,* (June 16, 1995) (citations omitted).

## III.

█ Staples argues that the trial court erred in finding that Duell did not have a duty to inspect and improve his land.[1] We disagree.

█ In South Carolina rural landowners and urban landowners have different duties and responsibilities. In *Israel v. Carolina Bar–B–Que, Inc.,* 292 S.C. 282, 356 S.E.2d 123 (Ct.App.1987), this court quoted W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 57, at 391 (5th ed. 1984), in holding:

> The rule of non-liability for natural conditions was obviously a practical necessity in the early days, when land was very largely in a primitive state. It remains to a considerable extent a necessity in rural communities, where the burden of inspecting and improving the land is likely to be entirely disproportionate not only to any threatened harm but even to the value of the land itself. But it is scarcely suited to cities, to say that a landowner may escape all liability for serious damage to his neighbors, merely by allowing nature to take its course. A different rule accordingly has been developed as to urban centers.

> This is well illustrated by the cases of dangerous trees. It is still the prevailing rule that the owner of rural land is not required to inspect it to make sure that every tree is safe, and will not fall over into the public highway and kill a person, although there is already some little dissent even as to this, and, at least if the defendant knows that the tree is

---

1. In her final brief, Staples did not argue the classification of Duell's property as urban or rural land constituted a jury question. We, therefore, do not address whether the trial court erred in declining to submit the rural or urban issue to the jury. *See State v. McLaughlin,* 307 S.C. 19, 413 S.E.2d 819 (1992) (citing *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981), for the proposition that exceptions not argued in brief are deemed abandoned).

dangerous, he may be required to take affirmative steps. But when the tree is in an urban area, and may fall into a city street, the landowner now has a duty of reasonable care, including inspection to make sure that the tree is safe. Recent decisions have extended the right to reasonable protection from travelers on the street to adjoining landowners as well.

*Israel,* 292 S.C. at 288, 356 S.E.2d at 127. *See generally* Thomas R. Trenkner, Annotation, *Liability of Private Owner or Occupant of Land Abutting Highway for Injuries or Damage Resulting from Tree or Limb Falling onto Highway,* 94 A.L.R.3d 1160 § 3 (1979). Even though other jurisdictions may be rethinking their approach to landowner liability, South Carolina follows the traditional rural and urban distinction. *Cf. Ford v. South Carolina Dep't of Transp.,* 328 S.C. 481, 492 S.E.2d 811 (Ct.App.1997). The policy reasons which were present at the inception of the rural landowner rule still exist in rural South Carolina today. *See Prosser and Keeton, supra,* § 57. To restrict or reverse the rural landowner rule would "impose a new and unusual burden upon the owners of forest lands." *Chambers v. Whelen,* 44 F.2d 340, 341 (4th Cir.1930) (holding a landowner not liable for an accident on a country road caused by a tree which fell from the landowner's property).

Staples also argues that constructive notice of the dead tree created a duty for Duell to safely remove the tree.[2] Constructive notice is notice that a reasonable person should know and carries a duty of reasonable care. *See Hightower v. Greenville County,* 255 S.C. 192, 195, 177 S.E.2d 785, 786 (1970) ("Where a defect or dangerous condition, not created by its act or that of its agents, has existed for such length of time that in the exercise of reasonable care the defect should have been discovered and remedied, the county is chargeable with knowledge of such defect, and consequently with negligence in not having remedied it."). Accordingly, we believe that it is illogical to say that rural landowners have no duty to inspect and improve their property, but then to charge a rural landowner with a duty arising out of constructive notice. Thus, in

---

**2.** Actual notice is not an issue in this case because Duell testified that neither he nor Woddle was aware of the dead tree, and Staples offered nothing to refute Duell's assertion.

this case, once the trial judge ruled that Duell's land was rural, all of Staples's evidence and testimony concerning what Duell or Woddle should have known or noticed became irrelevant because Duell was not liable for constructive notice.[3]

## IV.

Staples invites us to carve out a commercial exception to the rule imposing no duty on rural landowners to inspect their land. We decline.

Staples argues without citation to legal authority that because Highway 61 is the only means available for the public to reach Middleton Place, Duell had a duty to insure safe passage for everyone traveling along Highway 61. Adopting Staples's exception would effectively place on every farmer, rancher, and country store owner the puzzling and onerous task of determining whether their property is subject to a higher standard of care than that of other rural landowners. In addition, Staples's novel contention undermines the rural landowner rule's policy of protecting rural landowners from the burden of inspecting and improving land where the likely benefit is most often minimal. *See Prosser and Keeton, supra,* § 57. We believe that in actual practice, Staples's exception could produce bizarre and inconsistent results and we therefore do not adopt it.

## V.

Staples also argues that Duell assumed a duty by implementing a policy to search for dead trees. We disagree.

■ Even though there was conflicting evidence about whether Duell instituted an official policy for Woddle to inspect the premises for dead trees, we assume for the purposes of review that such a policy existed. The *Restatement (Second) of Torts* § 323(a) (1965), states:

---

3. Our holding is easily reconcilable with *Inabinett v. State Highway Department,* 196 S.C. 117, 12 S.E.2d 848 (1941). *Inabinett* dealt with the state highway department's liability for injuries resulting from a fallen tree, where the highway department had actual or constructive notice of the tree's condition. *Id.* at 123, 12 S.E.2d at 851. Unlike a rural landowner, however, the highway department has a duty to protect commuters along the highways.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

In *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986), the South Carolina Supreme Court recognized section 323(a) "as relating to the element of duty." *Id.* at 407, 351 S.E.2d at 150.

■ Because the rural landowner rule relieved Duell of any duty to inspect or improve his land, in order to prevail, section 323(a) mandates that Staples prove either that Duell's policy of searching for dead trees increased her risk of harm or that she detrimentally relied on Duell's policy. First, Staples presents no evidence that Woddle's act of simply patrolling the area looking for dead trees increased her risk of harm. Duell's policy of inspecting for dead trees did not hasten the decay of trees or affect when and where dead trees might fall. Second, Staples made no allegation that she knew of the policy of searching for dead trees before the accident. Without previous knowledge of the policy, Staples could not have relied on the policy. Thus, Duell's policy of looking for dead trees did not create a duty for which he could be held liable.

Not imposing a duty on Duell in this case promotes good public policy. To impose a duty on Duell would create the highly undesirable precedent of encouraging rural landowners to shield their eyes and never inspect their land. The better policy for this court to endorse is that rural landowners who inspect their lands for potential dangers are not creating a duty for themselves unless their inspection either increases the risk of harm to others or others detrimentally rely on their inspection.

## VI.

We hold that the trial judge correctly applied the rural landowner test to find that Duell, as a rural landowner, did not have a duty to inspect and improve his land along Highway 61.

In addition, we hold that Duell did not create a legal duty by instituting a policy of searching for dead trees along the highway.

For all of the foregoing reasons, the judgment of the lower court is hereby

AFFIRMED.

HEARN and STILWELL, JJ., concur.