625 S.E.2d 236

David R. **UNDERWOOD**, Appellant,

v.

Laurine H. **COPONEN**, Carolyn T. Webb, as Personal Representative of the Estate of Ansel B. Taylor, and County of Greenville, Defendants,

Of Whom Carolyn T. Webb, as Personal Representative of the Estate of Ansel B. Taylor is the Respondent.

No. 4067.

Court of Appeals of South Carolina.

Submitted Nov. 1, 2005.

Decided Jan. 9, 2006.

William H. Ehlies, II, of Greenville, for Appellant.

John P. Riordan and Zandra L. Johnson, both of Greenville, for Respondent.

SHORT, J.:

Laurine Coponen ran through a stop sign at an intersection and collided with David Underwood's car. Underwood brought an action against Carolyn Webb, the personal representative of Ansel Taylor's estate, alleging Taylor was negli-

gent in failing to trim a tree located on his property, thereby contributing to the accident. The trial court granted Webb's motion for summary judgment, which Underwood now appeals. We affirm.[1]

## FACTS

On May 4, 2002, Underwood was driving on Ansel School Road in Greenville County when Coponen ran through a stop sign at the intersection of Ansel School Road and Sharon Drive and collided with Underwood's car. Coponen testified that she did not see the stop sign because the limbs of a tree located on Taylor's property were partially blocking the sign. The respondent, Webb, is the personal representative of Taylor's estate. Taylor's wife testified that Taylor was aware the tree's limbs could obscure the stop sign and occasionally trimmed the tree to prevent it from doing so. Coponen testified that she had driven on Sharon Drive before; however, she also testified that she was not looking for a stop sign because she mistakenly thought she was on another road that did not have stop signs.

Underwood initially brought this action solely against Coponen, alleging that she was liable for his injuries from the collision because she was negligent in running the stop sign. However, on October 23, 2003, Underwood amended his complaint to include both Webb and Greenville County as additional defendants, alleging that either or both were negligent in failing to trim the tree located on Taylor's property, thereby contributing to the accident. Webb filed a motion for summary judgment. After a hearing on November 2, 2004, the trial judge granted Webb's motion. A settlement was reached between Underwood and the other defendants. Underwood now appeals.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, we apply the same standard which governs the trial court under Rule 56(c) of the South Carolina Rules of Civil Proce-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

dure: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Id.* at 494–495, 567 S.E.2d at 860. "If triable issues exist, those issues must go to the jury." *Nelson v. Charleston County Parks Recreation Comm'n*, 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct.App.2004).

## LAW/ANALYSIS

Underwood argues the trial court erred by granting Webb's motion for summary judgment because Taylor owed a duty of care to Underwood as a matter of law. We disagree.

██ "To prevail on a theory of negligence, the plaintiff must establish three elements: (1) that defendant owed a plaintiff a duty of care; (2) that by some act or omission, defendant breached that duty; and (3) that as a proximate result of the breach, the plaintiff suffered damage." *Staples v. Duell*, 329 S.C. 503, 506, 494 S.E.2d 639, 641 (Ct.App.1997). "The court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 39, 533 S.E.2d 312, 316 (2000).

██ In South Carolina, urban landowners have a duty of reasonable care to inspect trees on their property and to make certain they are safe. *Staples*, 329 S.C. at 508, 494 S.E.2d at 641–42 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 57 at 391 (5th ed.1984)); *Israel v. Carolina Bar–B–Que, Inc.*, 292 S.C. 282, 288, 356 S.E.2d 123, 127 (Ct.App.1987). Also, landowners have a duty of reasonable care to make certain their trees are safe for travelers of streets adjoining their land. *Staples*, 329 S.C. at 508, 494 S.E.2d at 642. In *Israel v. Carolina Bar–B–Que*, 292 S.C. 282, 288–90, 356 S.E.2d 123, 127–28 (Ct.App.1987), we held that a landowner has a duty to protect others from "defective or unsound trees on his premises" and found the landowner was liable for the damage caused by the fallen tree limb

because there was evidence that the owner either saw or could have seen upon reasonable inspection that the tree that caused the damage was partially decayed.

In this case, Taylor's tree was not unsafe or defective. The tree limb did not fall and injure Coponen. The only effect the tree limb had was that it partially obscured the stop sign, which Coponen testified that she was not looking for because she thought that she was driving on another street, which does not have stop signs. Therefore, the rule set forth in *Israel* does not apply to the facts in this case.[2]

■ Underwood also claims that because Taylor periodically trimmed the tree on his property, he undertook the duty to keep his tree from blocking the stop sign. However, the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Staples*, 329 S.C. at 510, 494 S.E.2d at 643 (quoting Restatement (Second) of Torts § 323(a) (1965)). While Taylor did trim the tree occasionally for the purpose of clearing the stop sign and his failure to trim the tree might have increased the

---

2. In making their decision, the *Israel* court adopted Illinois' ruling in *Mahurin v. Lockhart*, 71 Ill.App.3d 691, 28 Ill.Dec. 356, 390 N.E.2d 523 (1979). Therefore, it is worth noting that subsequent to publishing the *Mahurin* decision, Illinois issued several opinions on visual obstructions. In *Nichols v. Sitko*, 157 Ill.App.3d 950, 109 Ill.Dec. 903, 510 N.E.2d 971, 974 (1987), the court refused to extend the *Mahurin* rule, which involved an injury caused by a fallen dead branch, to an alleged visual obstruction from overgrown weeds. The court reasoned that the alleged obstruction was "no different from obstructions which are caused by houses and buildings encountered routinely in daily life." *Id.* Also, in *Adame v. Munoz*, 287 Ill.App.3d 181, 222 Ill.Dec. 619, 678 N.E.2d 26, 29 (1997), the court held that there is no duty "on the part of landowners to maintain their property in such a way that it does not obstruct the view of travelers on an adjacent highway, and this refusal to find such a duty applies even where the obstruction is an artificial condition."

risk that the sign would be obstructed, neither Underwood nor Coponen knew that Taylor trimmed the tree, and thus they did not rely on his doing so. Therefore, Taylor's occasional trimming of his tree did not create a duty for which he can be held liable.[3] Additionally, even if Taylor had assumed a duty to trim the trees, he could have abandoned the duty at any time so long as his actions did not increase any risk that might have existed. *See Id.* at 506, 494 S.E.2d at 641 (affirming the trial court's ruling that the defendant's policy of searching for dead trees did not create a duty because he could have abandoned the policy at any time as long as doing so would not increase the risk of harm).

**AFFIRMED.**

GOOLSBY, and ANDERSON, JJ., concur.

---

3. We further note that not imposing a duty on Taylor promotes good public policy. If we extended the duty to require private landowners to ensure that their trees do not hinder traffic control devises, we would be discouraging private landowners from voluntarily maintaining vegetation on their property which adjoins a public roadway or highway in an effort to shield themselves from unwarranted liability.