737 S.E.2d 512

Patricia Rhodes JOHNSON, Appellant,

v.

ROBERT E. LEE ACADEMY, INC., Jennifer Hostetler, Marc Quigley, Moore, Beauston & Woodham, LLP, Moore, Kirkland & Beauston, LLP and City of Bishopville, Defendants,

**Of Whom Moore, Beauston & Woodham, LLP is the, Respondent.**

Appellate Case No. 2011–198446.

No. 5067.

Court of Appeals of South Carolina.

Heard Nov. 13, 2012.
Decided Dec. 28, 2012.

James B. Moore, III and J. Edward Bell, III, both of Law Office of J. Edward Bell, LLC, of Georgetown, for Appellant.

Mason A. Summers, Anthony E. Rebollo, and Francis Marion Mack, all of Richardson Plowden & Robinson, PA, of Columbia, for Respondent.

KONDUROS, J.

Patricia Johnson appeals the circuit court's grant of summary judgment to the accounting firm Moore, Beauston, & Woodham, LLP (MBW) with respect to her negligence claim. We affirm.

## FACTS/PROCEDURAL HISTORY

Johnson was employed as the bookkeeper and office manager at Robert E. Lee Academy in Lee County, South Carolina. Her responsibilities in that role included collecting and depos-

iting tuition and other incoming funds. Around the middle of May 2006, Johnson had collected funds including $9,100 in cash plus additional cash and checks. On May 17, Johnson accounted for the $9,100 in her record keeping and planned to deposit the funds in the bank. Not having time to reconcile the additional cash and checks, she placed those funds in a container in the school's vault. According to bank records, the $9,100 deposit was made the morning of May 18. Johnson was delayed in depositing the other monies for various personal reasons, and when she arrived at work on May 23, the container was missing. She reported this to the school principal, Mrs. Virginia Stokes.

The school began an investigation into the missing funds and the Bishopville Police Department was brought in to assist. As part of the investigation, Johnson made a list of deposits from the weeks immediately preceding the disappearance of the funds and that list showed Johnson had made the $9,100 deposit. The school's monthly statement from the bank also showed the deposit.

Johnson was fired from her position at the school, and the school board hired MBW to investigate the missing funds.[1] Marc Quigley was the accountant from MBW assigned to this task. Quigley met with the Bishopville Police investigating officer, Calvin Collins, and Agent Glen McClellan from the South Carolina Law Enforcement Division on August 8. Agent McClellan testified in his deposition Quigley indicated funds appeared to be missing. A schedule of deposits compiled by MBW and the list created by Johnson were inconsistent because the MBW list did not show the $9,100 deposit. Agent McClellan also indicated he provided Quigley with his email address should further information come to light about which the authorities should know. According to Quigley, he emphasized to Officer Collins and Agent McClellan during this meeting his review was still in the preliminary stages and had not been finalized. Later that same day, Quigley compared the financial records and lists and realized the $9,100 deposit had been made. He emailed Agent McClellan with that

---

1. Whether MBW was hired to perform an actual audit or just to investigate the missing funds is disputed; however, that does not affect our analysis of the issues on appeal.

information the same day and also informed Katherine Wood-ham, a Robert E. Lee Academy school board member involved in the investigation. No one informed the Bishopville Police Department of this discovery. An arrest warrant accusing Johnson of misappropriating $9,100 was issued on August 15 and Johnson turned herself in to authorities on August 16.[2] The charges against Johnson were subsequently dropped.

Johnson sued Robert E. Lee Academy, Jennifer Hostetler and Marc Quigley (both of MBW), MBW, and the City of Bishopville for defamation, abuse of process, malicious prosecution, negligence, and false imprisonment. The claims against MBW were all dropped with the exception of the defamation and negligence claims. The circuit court granted summary judgment in MBW's favor on both remaining causes of action. With respect to the negligence claim, the circuit court determined that because Johnson was not a client, MBW owed no duty of care thereby eliminating that claim as a matter of law. This appeal followed.

## STANDARD OF REVIEW

A trial court may grant a party's motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "An appellate court applies the same standard used by the trial court under Rule 56(c) when reviewing the grant of a motion for summary judgment." *Epstein v. Coastal Timber Co.*, 393 S.C. 276, 281, 711 S.E.2d 912, 915 (2011). "This Court has established that '[t]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof.'" *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 357–58, 650 S.E.2d 68, 71 (2007) (internal citations omitted).

---

**2.** The record is unclear as to exactly the amount of funds that were unaccounted.

## LAW/ANALYSIS

■ Johnson maintains the circuit court erred in finding MBW owed her no duty. She contends Quigley's actions constituted a voluntary undertaking that gave rise to a duty of care toward her. We disagree.

■ "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Ellis v. Niles*, 324 S.C. 223, 227, 479 S.E.2d 47, 49 (1996). "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Hendricks v. Clemson Univ.*, 353 S.C. 449, 456, 578 S.E.2d 711, 714 (2003). "Ordinarily, the common law imposes no duty on a person to act. Where an act is voluntarily undertaken, however, the actor assumes the duty to use due care." *Id.* at 456–57, 578 S.E.2d at 714 (citing *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991)).

The recognition of a voluntarily assumed duty in South Carolina jurisprudence[3] is rooted in the Restatement of Torts, which states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things,

---

**3.** *See Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 657 (2006) (recognizing a duty may arise under section 323); *Russell v. City of Columbia*, 305 S.C. 86, 89–90, 406 S.E.2d 338, 340 (1991) (relying in part on section 323 to find duty may exist between volunteer defendant and plaintiff); *Sherer v. James*, 290 S.C. 404, 407–08, 351 S.E.2d 148, 150 (1986) (internal citation omitted) (" 'Section 323(a) simply establishes a duty on one who undertakes to render services for the protection of another *to use due care* to avoid increasing the risk of harm.' We agree with this rationale."); *Roundtree Villas Ass'n, Inc. v. 4701 Kings Corp.*, 282 S.C. 415, 423, 321 S.E.2d 46, 51 (1984) (finding common law duty of care arose under section 323 when lender undertook to repair defects in condominiums); *Shropshire v. Jones*, 277 S.C. 468, 471, 289 S.E.2d 410, 411 (1982) (stating cause of action for negligent performance of gratuitous promise is summarized in Restatement section 323); *Staples v. Duell*, 329 S.C. 503, 510, 494 S.E.2d 639, 643 (Ct.App.1997) (noting the South Carolina Supreme Court recognized section 323(a) "as relating to the element of duty."); *Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 444–45, 494 S.E.2d 827, 832–33 (Ct.App.1997) (finding no duty under section 323 when visitor to apartment building did not rely on any security measures undertaken by the building, and any measures taken were for protection of the tenants).

is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

The relationship between Johnson and MBW does not fit within the parameters set forth in section 323(a). Section 323(a) contemplates a party relying on the rendering of services to another for the other's protection. Even assuming Quigley acted voluntarily, he assisted the Bishopville Police Department in its investigation.[4] He did not render a service to Johnson; he assisted authorities. Additionally, his conduct was not undertaken for Johnson's protection and any negligence in his performance did not result in her physical harm.[5]

Furthermore, contorting the Restatement to create a precedent that may have a chilling effect on cooperation with the authorities or other conduct that inures to the public good is ill-advised and poor public policy. *See Underwood v. Coponen*, 367 S.C. 214, 219 n. 3, 625 S.E.2d 236, 239 n. 3 (Ct.App. 2006) ("If we extended the duty to require private landowners to ensure that their trees do not hinder traffic control devises, we would be discouraging private landowners from voluntarily maintaining vegetation on their property which adjoins a

---

4. While we do not need to reach the factual issue of whether Quigley's conduct arose to the level of volunteer, we generally agree with Chief Justice Toal's statement that "[i]t simply does not square with common sense experience to characterize a ... response to a governmental inquiry as voluntary." *See Miller v. City of Camden*, 329 S.C. 310, 318, 494 S.E.2d 813, 817 (1997) (Toal, C.J., dissenting in part, concurring in part).

5. We are cognizant of Restatement (Second) of Torts section 324A, although that section has not been adopted by our courts and is not specifically argued by Johnson on appeal. *See Miller*, 329 S.C. at 315 n. 2, 494 S.E.2d at 816 n. 2 (declining to adopt section 324A). Section 324A contemplates a duty arising on the part of one who undertakes to render a service to another for the protection of a third party from physical harm. However, even applying section 324A to these circumstances, Johnson's cause of action fails because Quigley's cooperation with police was not intended to protect any party from physical harm.

public roadway or highway in an effort to shield themselves from unwarranted liability."); *Staples,* 329 S.C. 503, 510, 494 S.E.2d 639, 643 (Ct.App.1997) (declining to impose duty on defendant to inspect property under circumstances as doing so "would create the highly undesirable precedent of encouraging rural landowners to shield their eyes and never inspect their land"). Other causes of action exist to address when citizens have been maliciously accused of or prosecuted for a crime.

Additionally, in *Hendricks,* 353 S.C. at 456–58, 578 S.E.2d at 714–15, the South Carolina Supreme Court signaled a reluctance to expand the voluntary assumption of duty doctrine beyond the circumstances set forth in the Restatement 323 and recognized in our jurisprudence.

> We believe recognizing a duty flowing from advisors to students is not required by any precedent and would be unwise, considering the great potential for embroiling schools in litigation that such recognition would create. Further, the Court of Appeals citation to *Miller* [329 S.C. at 318, 494 S.E.2d at 817] indicating a duty may have been created by Clemson's voluntary undertaking to advise Hendricks to ensure NCAA eligibility, is inapposite. The line of cases *Miller* discusses have thus far been limited to situations in which a party has voluntarily undertaken to prevent physical harm, not economic injury.

*Id.* at 458, 578 S.E.2d at 715.

The circumstances of this case do not fit within the existing voluntary assumption of duty framework, and we decline to expand that doctrine under the facts presented.[6]

Additionally, Johnson submitted with her Rule 59(e), SCRCP, motion the affidavit of John Hamilton, a certified public accountant, who opined MBW owed Johnson a duty of care under the circumstances. However, the existence of a

---

6. South Carolina has recognized an accountant may have a duty to a third party under a negligent misrepresentation cause of action. *See ML–Lee v. Deloitte,* 327 S.C. 238, 241 n. 3, 489 S.E.2d 470, 471 n. 3 (1997) ("We adopt the [Restatement (Second) of Torts] § 552 standard of liability.... Under § 552, an accountant has a duty to exercise reasonable care or competence in obtaining or communicating information."). However, to successfully pursue such a claim, the plaintiff must have relied on the accountant's misrepresentation, and Johnson conceded at oral arguments she did not rely on Quigley's statements.

legal duty is a question of law for the court, and Hamilton's affidavit does not call into question any facts in the case. *See Hendricks,* 353 S.C. at 456, 578 S.E.2d at 714 ("Whether the law recognizes a particular duty is an issue of law to be decided by the Court."). The affidavit simply proposes extending the potential third-party liability of an accountant beyond the limitations placed thereon by the Restatement. Consequently, his affidavit did not create a genuine issue of material fact warranting the reconsideration of the circuit court's decision as to summary judgment.

Because MBW did not render a service to Johnson or for her protection from physical harm, we conclude MBW owed no duty of care to Johnson as a matter of law arising out of Quigley's conduct in communicating with police officials regarding the investigation into REL's missing funds. The circuit court's grant of summary judgment is

*AFFIRMED.*

SHORT and LOCKEMY, JJ., concur.