**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Elizabeth Hope Rainey, as the Appointed Guardian ad Litem to Owen C., a minor, Appellant.

v.

Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center, South Carolina Department of Social Services, Bruce Bryant, as the Constitutional Office of the Sheriff of York County, the York County Sheriff's Department, and York County, Defendants,

Of whom Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center is the Respondent.

Appellate Case No. 2013-002058

———————

Appeal From York County
S. Jackson Kimball III, Special Circuit Court Judge

———————

Unpublished Opinion No. 2015-UP-209
Heard March 2, 2015 – Filed April 22, 2015

———————

**AFFIRMED**

———————

S. Randall Hood, Lara Pettiss Harrill, Jordan Christopher Calloway, and Deborah G. Casey, all of Rock Hill, and Whitney Boykin Harrison, of Columbia, all of McGowan, Hood & Felder, LLC, for Appellant.

Monteith Powell Todd and Robert E. Horner, of Sowell
Gray Stepp & Laffitte, LLC, of Columbia, for
Respondent.

---

**PER CURIAM:** In this negligence action, Appellant Elizabeth Hope Rainey seeks review of the circuit court's order granting summary judgment to Respondent Charlotte-Mecklenburg Hospital Authority d/b/a/ Carolinas Medical Center. Appellant assigns error to the circuit court's refusal to conclude that Respondent had a duty to assess the home environment of Respondent's infant patient (Child), before he was discharged from Respondent's care. We affirm.

"An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011); *see also Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999) ("In a negligence action, a plaintiff must show that the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages."). "An affirmative legal duty [of care] . . . may be created by statute, contract relationship, status, property interest, or some other special circumstance." *Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991).

Here, Appellant asserts that Respondent had a common law duty to assess Child's family environment before he was discharged from Levine Children's Hospital (Levine), part of Carolinas Medical Center, and then abused by his father. Appellant argues this duty arose out of either (1) the special relationship between Respondent and Child, or (2) Respondent's voluntary undertaking of a psychosocial assessment of Child. We address these alternative grounds in turn.

## A. Special Relationship

Appellant argues that the special relationship between Respondent and Child gave rise to Respondent's duty to (1) assess Child's home environment, (2) communicate with the York County division of the South Carolina Department of Social Services (DSS) regarding Respondent's assessment, and (3) potentially intervene on Child's behalf. In support of her argument that a special relationship existed

between Respondent and Child, Appellant cites *Madison ex rel. Bryant v. Babcock Center, Inc.*, 371 S.C. 123, 638 S.E.2d 650 (2006) and *Niece v. Elmview Group Home*, 929 P.2d 420 (Wash. 1997). In both of these cases, the defendants were providers of residential care for disabled persons and the plaintiffs were living in these residential care settings at the time of the alleged breach of duty. *See Madison*, 371 S.C. at 137, 638 S.E.2d at 657 (holding that a non-profit corporation providing housing and other services for people with mental disabilities had a special relationship with a mentally disabled woman admitted for care and treatment at the corporation's facility); *Niece*, 929 P.2d at 427 ("[T]he special relationship between a group home for the developmentally disabled and its vulnerable residents creates a duty of reasonable care, owed by the group home to its residents, to protect them from all foreseeable harms . . . ."). Likewise, in at least one other jurisdiction, a hospital has been held to have a special relationship with its patient during the time the patient is hospitalized. *See Panion v. United States*, 385 F. Supp. 2d 1071, 1090 (D. Haw. 2005) (holding that the United States had a special relationship with the plaintiff given her status as a patient at an army hospital); *id.* (holding that the United States assumed a custodial role by admitting the plaintiff to the army hospital and the medical intensive care unit).

However, all of these cases are distinguishable from the present case because Appellant does not challenge the quality of care Respondent provided to Child during his four-day hospitalization in December 2009. In addition to stabilizing Child's condition, Respondent's staff thoroughly tested Child for physical evidence of abuse. The results of these tests were inconclusive as to whether Child had been abused. Further, it is undisputed that Respondent complied with the reporting statute, S.C. Code Ann. § 63-7-310 (2010) (amended June 8, 2010), when a staff member contacted DSS regarding suspected abuse or neglect of Child.[1] Rather, Appellant is essentially asking this court to impose on all hospitals a common law duty to protect a juvenile patient from third persons who might harm him after he has been discharged from a hospital's care. Our supreme court has not spoken on this precise issue, and we may not create such a common law duty. *See* Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 12-13 (2d ed. 2002) ("The Court of Appeals is an error-correction court, whereas the Supreme Court is a law-

---

[1] We note our supreme court has held that there is no private cause of action under the predecessor to section 63-7-310. *See Doe v. Marion*, 373 S.C. 390, 399, 645 S.E.2d 245, 250 (2007) (concluding this court did not err in finding that section 20-7-510 of the South Carolina Code did not create a private cause of action).

giving court.").  Accordingly, Appellant may not rely on Respondent's special relationship with Child as a ground for imposing liability for Child's injury.

## B.     Voluntary Undertaking

Alternatively, Appellant argues that Respondent's duty arose out of its voluntary undertaking of a psychosocial assessment of Child.  In support of this argument, Appellant cites *Johnson v. Robert E. Lee Academy, Inc.*, 401 S.C. 500, 504, 737 S.E.2d 512, 514 (Ct. App. 2012), for the proposition that where an act is voluntarily undertaken, the actor assumes the duty to use due care.  In *Johnson*, 401 S.C. at 504-05 & n.3, 737 S.E.2d at 514 & n.3, this court acknowledged South Carolina's previous adoption of the Restatement (Second) of Torts § 323, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, *if*
>
> (a) his failure to exercise such care *increases* the risk of such harm, or
>
> (b) the harm is suffered because of the other's *reliance upon the undertaking*.

(emphases added).

Here, Respondent voluntarily employed professional social workers to "aid in the assessment process."[2]  However, under section 323 of the Restatement, this

---

[2] Respondent also adopted a policy statement setting forth the procedures for hospital staff to follow in cases of suspected child abuse or neglect.  However, at oral argument, Appellant's counsel conceded that Respondent's adoption of this policy, by itself, did not create a duty under section 323 of the Restatement.  Rather, counsel argued, this policy statement was relevant to the standard of care.  *See Madison*, 371 S.C. at 135, 638 S.E.2d at 656 (distinguishing the existence of a

undertaking cannot create a duty unless (1) the failure of Levine's staff to exercise reasonable care actually increased the risk of harm to Child or (2) Child suffered harm because he relied on this undertaking.

There is no evidence in the record showing that Levine's staff increased the risk of harm to Child—the evidence does not show that the social workers' participation in the assessment process caused DSS or law enforcement to perform a less thorough investigation than they would have otherwise.  There is no evidence that DSS caseworkers omitted certain tasks from their investigations with the understanding that Levine's social workers would cover those tasks.  Further, there is no evidence showing that Levine's social workers caused DSS to determine that Child's discharge to his parents was appropriate when DSS would not have otherwise made that determination.

Moreover, Child did not rely on Respondent's employment of social workers to assess Child.  Rather, our legislature has designated DSS as the entity responsible for investigating a case of suspected child abuse or neglect within twenty-four hours of receiving a report.  *See* § 63-7-310 (requiring certain persons to report suspected abuse or neglect to DSS or law enforcement); S.C. Code Ann. § 63-7-920(A)(1) (2010) ("Within twenty-four hours of the receipt of a report of suspected child abuse or neglect or within twenty-four hours after the department has assumed legal custody of a child pursuant to Section 63-7-660 or 63-7-670 or within twenty-four hours after being notified that a child has been taken into emergency protective custody, the department *must* begin an appropriate and *thorough* investigation to determine whether a report of suspected child abuse or neglect is 'indicated' or 'unfounded.'" (emphases added)).  In contrast, there is no South Carolina law that authorized Respondent to either (1) retain custody of Child, against his parents' wishes, beyond twenty-four hours,[3] or (2) enter Child's home to investigate his home environment.

---

duty from "standards of care establishing the extent and nature of the duty in a particular case, standards by which a fact finder may judge whether a duty was breached").

[3] Section 63-7-750 of the South Carolina Code (2010) authorizes a treating physician or hospital to detain a child "for up to twenty-four hours without the consent of the person responsible for the child's welfare if the physician or hospital . . . has reason to believe that the child has been abused or neglected."

DSS was actively involved in Child's case as soon as it was notified of the suspicions of Levine's medical team. An on-call caseworker from DSS arrived at Levine on the evening of December 6, 2009, to obtain Child's history and investigate Child's family for possible indicators of an abusive home environment. A DSS caseworker also asked the maternal grandmother and her husband if they would be willing to take custody of Child if DSS determined it was necessary to remove Child from his home. Further, DSS notified the York County Sheriff's Department of the possible abuse of Child, and the Department found no criminal history for Child's mother or father. DSS staff ultimately decided to release Child to his parents and to follow up with a home assessment. Therefore, DSS instructed Respondent to discharge Child to his parents. On December 21, 2009, a DSS caseworker visited Child's home and interviewed Child's mother and father. Notably, DSS did not seek to take Child into emergency protective custody following this visit.

Based on the foregoing, Appellant has not presented any evidence showing that (1) any failure on the part of Levine's staff to exercise reasonable care actually increased the risk of harm to Child, or (2) Child suffered harm because he relied on Respondent's employment of social workers to assess Child. Therefore, Appellant has not established the conditions for liability set forth in section 323 of the Restatement.

In sum, there is no South Carolina precedent for imposing on hospitals a common law duty to protect a juvenile patient from third persons who might inflict harm after he has been discharged from a hospital's care. Further, there is no evidence in this case supporting the conditions for liability set forth in section 323 of the Restatement. Accordingly, we affirm the circuit court's order granting summary judgment to Respondent. In light of the foregoing, we need not reach the merits of Appellant's remaining issue or Respondent's additional sustaining ground. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address the remaining issues on appeal when resolution of a prior issue is dispositive).

**AFFIRMED.**

**WILLIAMS, GEATHERS, and McDONALD, JJ., concur.**